82 N.J. Super. 438 (1964)
198 A.2d 98
JAMES TALCOTT, INC., A CORPORATION OF THE STATE OF NEW YORK, PLAINTIFF-RESPONDENT,
v.
JOSEPH SHULMAN, DEFENDANT AND THIRD-PARTY PLAINTIFF-APPELLANT,
v.
SAYVE CORPORATION OF AMERICA, INC., ET AL., THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 24, 1964.
Decided March 9, 1964.
*439 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Theodore W. Trautwein argued the cause for appellant.
Mr. Walter J. Bilder argued the cause for respondent (Messrs. Bilder, Bilder & Freeman, attorneys; Mr. Walter J. Bilder, on the brief).
The opinion of the court was delivered by COLLESTER, J.A.D.
Defendant Joseph Shulman appeals from a summary judgment granted by the Bergen County Court in favor of plaintiff James Talcott, Inc. (Talcott) for $25,124.60 in a suit on a negotiable promissory note. The issues on this appeal are (1) whether the pleadings, affidavits and depositions filed showed a genuine issue of material facts precluding the entry of summary judgment, and (2) whether plaintiff occupied the status of a holder in due course of a negotiable instrument.
Defendant is a New Jersey resident engaged in the practice of dentistry. One Jerome Wallens of Atlanta, Georgia, who was related by marriage to defendant, was president of Franchised *440 Business Opportunities, Inc. (Franchised Business), which corporation was a sales agent for Sayve Corporation of America (Sayve). Sayve was a manufacturer and manfacturer's representative for the sale of portable laundry establishments and equipment.
In 1959 defendant became interested in a proposed venture to install a coin-operated laundry business in Georgia. As a result, a corporation known as Professional Investment Corp., Inc. (Professional Investment) was organized in Georgia, in which defendant and others became stockholders. Defendant was elected president.
On October 15, 1959 Professional Investment purchased the equipment and a portable building required to install a coin-operated laundry in Atlanta from Franchised Business for $33,932.50. As part of the transaction, Professional Investment executed a conditional sales contract with the seller and delivered over its promissory note to Franchised Business in the sum of $27,007.52 as part of the purchase price. Defendant signed the note as a comaker.
The note was payable in 59 successive monthly installments of $450 each and a final installment of $457.50. It further provided that payments would be made at the office of plaintiff James Talcott, Inc. in New York City, "or at such other place as the holder hereof may from time to time appoint."
The conditional sales contract contained the following provision:
"Seller may transfer and sell this agreement and note to James Talcott, Inc., 225 Fourth Avenue, New York 3, New York, in which event assignee shall have all the rights of the Seller hereunder and Buyer agrees to pay the unpaid balance owing to James Talcott, Inc., on due dates. Buyer agrees that Buyer's obligation hereunder shall be unaffected by any default or obligation of the Seller arising out of the sale of the chattels or otherwise and agrees not to interpose any claim against the Seller as a defense, offset or counterclaim in any action by assignee upon this contract or said note."
Following the execution of the conditional sales contract and promissory note, Franchised Business assigned the contract and transferred the note by endorsement to Sayve.
*441 Plaintiff is an industrial finance company. On September 11, 1959 it had entered into an agreement with Sayve whereby it agreed to purchase from the latter conditional sales contracts, installment sales paper, promissory notes and other forms of obligation acceptable to plaintiff, arising out of a sale, lease or rental of machinery, equipment or other merchandise by Sayve to its customers.
In the operation of its finance company business it was the practice of plaintiff to prepare and distribute blank forms of conditional sales agreements and promissory notes to companies who sold them commercial paper. The forms used by Franchised Business and defendant in the above mentioned sale had been prepared by plaintiff and supplied to Sayve for the latter's use.
On December 11, 1959 Sayve sold defendant's promissory note to plaintiff for $19,445.39, transferring it by endorsement. Sayve also assigned the conditional sales contract to plaintiff. On the same date Sayve delivered over to plaintiff a certificate of installation dated November 27, 1959, purportedly signed by defendant as president of Professional Investment, which certified that the equipment described in the conditional sales contract had been delivered and installed.
Professional Investment paid plaintiff installment payments due on said note for 14 successive months, totalling $6,300. It defaulted on the payment due March 21, 1961, and failed thereafter to make further payments. Plaintiff exercised its option to declare the unpaid balance immediately due and payable and thereafter brought suit on the note against defendant, the comaker.
Defendant's answer admitted execution and delivery of the note, and that plaintiff was the holder and owner thereof. He denied plaintiff was a holder in due course.
Defendant alleged that he was fraudulently induced to sign the note as a comaker by Jerome Wallens; that he received no consideration for signing it; that the equipment purchased proved to be defective; and that plaintiff was *442 guilty of fraud in the negotiation of the note and had notice of all defects.
Plaintiff moved for summary judgment pursuant to R.R. 4:58. From the pleadings and motion papers, the trial judge found no genuine issue as to any material facts challenged and that plaintiff was entitled to judgment as a matter of law.
It is to be noted that the negotiable promissory note, which is the subject matter of plaintiff's action, was executed prior to January 1, 1963, the effective date of the Uniform Commercial Code, L. 1961, c. 120; N.J.S. 12A:1-101 et seq., and thus is governed by R.S. 7:1-1 et seq., the pre-existing Negotiable Instruments Law. See N.J.S. 12A:10-101.
Defendant having admitted plaintiff is the holder and owner of the note, there is a prima facie presumption that plaintiff is a holder in due course. R.S. 7:2-59. Accordingly, the burden of proving that the statutory requirements of a holder in due course did not exist at the time plaintiff accepted the note from Sayve is upon the defendant. See R.S. 7:2-52; Bancredit, Inc. v. Bethea, 65 N.J. Super. 538, 543 (App. Div. 1961); Crown Capital Corp. v. Broderick, 130 N.J.L. 198, 200 (Sup. Ct. 1943).
Defendant challenges plaintiff's status as a holder in due course on the ground that plaintiff's purchase of the note was not made in good faith, and that when plaintiff acquired the note it had notice of its infirmities. See R.S. 7:2-52.
Defendant's affidavit states that he believes Franchised Business, Sayve and plaintiff worked in close concert, each having knowledge of representations made in each conditional sale and were, in effect, one organization. Based on this belief, he stated that Wallens was, in effect, an agent of plaintiff, to whom knowledge of Wallens' fraudulent representations and the fact that the equipment sold was defective must be imputed. He further denied signing the certificate of installation, stating that someone had signed his name thereto, without his authority.
*443 Defendant also relies upon the affidavit of Jerome Wallens who stated, on information and belief, that plaintiff had knowledge when it purchased the note and received the certificate of installation on December 11, 1959, that the equipment had not yet been delivered to Professional Investment, and that when it was delivered (subsequent to the purchase of the note) plaintiff had knowledge, through Sayve, that it was defective.
It is obvious that the affidavits of defendant and Wallens, insofar as they relate to material issues, are based on conclusions or on "information and belief." It is well established that where the movant demonstrates a prima facie right to summary judgment, the opponent of the motion is required to show by competent evidential material that a genuine issue of material fact exists. Robbins v. Jersey City, 23 N.J. 229, 241 (1957); New Jersey Mortgage and Investment Corp. v. Calvetti, 68 N.J. Super. 18, 32 (App. Div. 1961). Mere sworn conclusions of ultimate facts, without material basis or supporting affidavits by persons having actual knowledge of the facts, are insufficient to withstand a motion for summary judgment. New Jersey Mortgage and Investment Corp. v. Calvetti, supra, 68 N.J. Super. p. 32; Ocean Cape Hotel Corp. v. Masefield Corp., 63 N.J. Super. 369, 383 (App. Div. 1960); Ash v. Frazee, 37 N.J. Super. 542, 547-548 (App. Div. 1955), and see R.R. 4:58-6 and 4:44-4. The affidavits of defendant and Jerome Wallens do not meet this test.
At oral argument defendant conceded he could not establish proof that any employee of plaintiff corporation had actual knowledge of the alleged defects in the transaction between defendant and Franchised Business. However, he places great stress upon the admitted facts that plaintiff (1) had entered into a discounting agreement with Sayve, and (2) had provided Sayve with forms bearing plaintiff's name for use in discounting the commercial paper. He contends this is a factor which evidences lack of good faith on the part of plaintiff in its acquisition of the promissory note herein involved.
*444 Defendant relies on Westfield Investment Co. v. Fellers, 74 N.J. Super. 575 (Law Div. 1962). There, the court held the finance company and the vendor-payee were so closely bound together that the finance company was a party to the original transaction and therefore could not qualify as a holder in due course. The facts in Westfield, supra, are dissimilar and distinguishable from the case sub judice. While in Westfield, as in the case at bar, the finance company provided like forms for its dealers, there were many facts to indicate actual knowledge of the vendor-payee's acts on the part of the holder of the note.
In Westfield, supra, the court said:
"This court is not about to hold that the mere supplying of negotiable forms in blank by the financing company to a vendor is sufficient to strip the financing company of its holder in due course status. However, this court is saying that the supplying of such forms is one of the factors to be looked at in defining the relationship existing between the parties, namely, the vendor, the financing company and the maker." (74 N.J. Super., at p. 585)
The court alluded to other factors constituting sharp practices which weighed against the good faith of the financing company in arriving at its decision  none of which are present in the instant case.
However, if it is to be concluded from Westfield, supra, that the mere supplying of commercial paper, with its name imprinted thereon, by a finance company for use by its vendor-payees, is sufficient evidence to import lack of good faith on the part of the finance company, thereby vitiating its status as a holder in due course, and thus precluding summary judgment, we must disagree with such decision. In our view a better course to follow is set forth by the Supreme Court of Wisconsin in Implement Credit Corp. v. Elsinger, 268 Wis. 143, 66 N.W.2d 657, 67 N.W.2d 873 (Wis. 1954), where the court refused to deny holder in due course status to a financing company, which had provided its vendor-payees with its forms. Pointing out that a large percentage of sales necessarily is made by dealers to their customers on credit, *445 through the medium of conditional sales contracts and negotiable promissory notes providing for installment payments, the court said:
"A very considerable segment of our economy is dependent for its continued prosperity upon such free flow of credit, and anything which delays or impedes such process may well be regarded as against the public interest. Finance companies and banks hesitate to purchase such notes, contracts, and chattel mortgages, if executed on printed forms with which they are not familiar, without first submitting them to the scrutiny and opinion of their attorneys. To obviate such delays and expense, these financial institutions have widely adopted the practice of having their own attorneys draft forms of notes, including the indorsements or assignments on the back, chattel mortgages, and conditional sales contracts, and then have had the same printed and supplied to the dealers from whom they customarily purchase customer paper. By so doing such banks and finance companies are better enabled to render prompt service to dealers when they present customer paper for discount because there is no delay occasioned by passing on the forms of the instruments when their own forms have been used by the dealers.
We can perceive of no reason based upon either logic or public policy why a finance company or bank which supplies such blank printed forms should be held thereby to have constituted the dealers their agents, or should be deemed to have participated in the sale by the dealer to the customer, including the execution of any contract, mortgage, or note which the customer may have executed to the dealer." (66 N.W.2d, at p. 666)
We hold that lack of good faith is not demonstrated merely because plaintiff Talcott entered into a discounting arrangement with Sayve and provided its forms for the use of vendors.
A careful scrutiny of the pleadings, affidavits and depositions filed in this case fails to indicate lack of good faith on the part of plaintiff or that it had actual knowledge or notice of any infirmities in the promissory note when it accepted the same. An apposite case is New Jersey Mortgage and Investment Corp. v. Calvetti, supra.
We are satisfied that the trial court properly granted plaintiff's motion for summary judgment.
Affirmed.