In the Matter of APPLIANCE PACKING
& WAREHOUSING CORP.,
Bankrupt.

No. 72–2104.

United States Court of Appeals,
Second Circuit.

Argued Feb. 21, 1973.

Decided March 20, 1973.

**1012**

Howard Karasik, New York City, for appellant, Joseph Gould, Trustee in Bankruptcy of Appliance Packing & Warehousing Corp.

Morton L. Gitter, New York City (Lawrence Bauchner, and Otterbourg, Steindler, Houston & Rosen, P.C., New York City, of counsel), for Warren Schwartz, Trustee in Bankruptcy of Arista Trading Co.

Before FEINBERG, MULLIGAN and TIMBERS, Circuit Judges.

MULLIGAN, Circuit Judge.

This is an appeal from a decision of the United States District Court for the Southern District of New York, Hon. Constance Baker Motley, D.C., 358 F. Supp. 84 setting aside an order of the Referee in Bankruptcy, Hon. Roy Babitt, which had subrogated the trustee in bankruptcy of Appliance Packing & Warehousing Corp. (Appliance) to whatever rights Westinghouse Electric International Co. (Westinghouse) has against Arista Trading Company (Arista), also a bankrupt. We affirm the decision of the District Judge.

Arista, a partnership, purchased appliances from Westinghouse for ultimate resale in the export market. Appliance, a corporation whose sole shareholders were the two partners of Arista, packaged and warehoused appliances for export; the greater part of its business was attributable to Arista. By July, 1964, Arista owed Westinghouse about $147,000. On July 28, 1964 Arista and Appliance jointly executed a $142,000 promissory note, payable in 24 installments, to Westinghouse. The note was secured by a mortgage on Appliance's real property.

Arista's financial position continued to be unstable and in 1965, Arista defaulted on the note with an outstanding indebtedness of $97,000. To preserve Arista's business, Appliance on May 26, 1965 executed a further guarantee of *all* obligations owed by Arista to Westinghouse. Within a few weeks, Appliance gave another mortgage on its real property to Westinghouse as collateral for all amounts it guaranteed under the May 26 agreement. Neither the guarantee nor the new mortgage made any explicit reference to the 1964 promissory note.

Arista continued to be unable to meet the periodic payments. On June 19, 1966, Arista and Appliance executed another installment promissory note, in the sum of $37,500, payable to Westinghouse. One month later, on July 19, 1966, Appliance executed an "extension of mortgage" agreement, in reference to the mortgage given as security for the July 28, 1964 note. Westinghouse simply agreed to extend the time for payment of some $97,000 due on the 1964 promissory note, until July 1, 1967.

When Arista and Appliance were both adjudicated bankrupts, Westinghouse filed a claim for $111,639.16 in Appliance's proceeding for the unpaid balances due on both notes. Appliance's trustee objected and Westinghouse agreed to accept $50,000 from Appliance in partial satisfaction of its claims, together with an unsecured claim for the balance. Arista likewise filed a claim in the Appliance proceeding, and this led the trustee of Appliance to seek to subrogate Appliance to Westinghouse's rights on the notes against Arista and to offset these rights against Arista's claim.

Appellant, the trustee of Appliance, claims that the note originally executed on July 28, 1964 is governed by the New York Uniform Commercial Code and that

pursuant to § 3–415 (McKinney 1964) of the Code, Appliance was an accommodation party to the note and is now entitled to full indemnity from Arista. The trustee of Arista claims that the former New York Negotiable Instruments Law governs the rights of the parties on the note. Under that statute, he argues, Appliance cannot be an accommodation party, but rather must be considered a co-maker, entitled only to contribution from Arista. The Referee in Bankruptcy held that the Uniform Commercial Code was applicable and that Appliance was entitled to full indemnity. On Arista's petition to review, the District Court held that the Negotiable Instruments Law governed the note and that Arista was entitled to contribution, i. e., one-half of the excess of payments made by Appliance over payments made by Arista on the note, might be set off against Arista's claim against Appliance.[1]

The crucial question to be determined is whether the Uniform Commercial Code or the Negotiable Instruments Law is applicable. The New York Uniform Commercial Code "applies to transactions entered into and events occurring on and after" September 27, 1964. N.Y.U.C.C. §§ 10–101 & 10–105 (McKinney 1964). Relying on the term "events," the Referee held that the Commercial Code governed since "all of the operative facts determining the extent of indebtedness to [Westinghouse] followed the enactment of the Uniform Commercial Code." The District Judge reversed on the basis of § 10–102(2) (McKinney Supp.1972) which provides in pertinent part:

Transactions validly entered into before the effective date specified in Section 10–105 of this Act and the rights, duties and interests flowing from them remain valid thereafter and may be terminated, completed, consummated or enforced as required or permitted by any statute or other law repealed or modified by this Act as though such repeal or modification had not occurred . . . .

 By the terms of the 1964 note, some 22 of the scheduled 24 installment payments were due *after* the effective date of the Commercial Code in New York. While §§ 10–101 and 10–105 have been criticized as somewhat vague,[2] we interpret § 10–102(2) to mean that the mere fact that these payments were to be made after the effective date of the Code, does not make the Code applicable to the 1964 note. See James Talcott, Inc. v. Shulman, 82 N.J.Super. 438, 198 A.2d 98 (App.Div.1964); cf. Gem Corrugated Box Corp. v. National Kraft Container Corp., 427 F.2d 499, 502 n. 2 (2nd Cir. 1970). The "extension of mortgage" agreement merely extended the time for payment of the note until July 1, 1967, and in our view did not alter Arista's and Appliance's liabilities on the instrument. The May 26, 1965 guarantee, the other mortgage and the $37,500 promissory note, were in our view separate transactions which did not modify or relate to the 1964 note. Therefore the guarantee could not give Appliance any greater rights against Arista for payments made on account of the note.

A. J. Armstrong Co. v. Janburt Embroidery Corp., 97 N.J.Super. 246, 234 A.2d 737 (Super.Ct.1967), cited by the appellant, is inapposite. There a series of 72 promissory notes were made prior

---

1. This amounts to approximately $3,000. Arista had paid some $44,000 on the note, and Appliance has given Westinghouse $50,000.

 It should be noted that the present appeal deals only with the promissory note executed on July 28, 1964 for $142,000. Arista's trustee states that the June 19, 1966 note for $37,500 is governed by the New York Uniform Commercial Code and that Appliance, as an accommodation party, is entitled to full indemnity for whatever it pays Westinghouse on this obligation.

2. See Janover & Dulles, The Application of the Transition Provisions of Uniform Commercial Code Article 10 to Chattel Security Filing, 39 N.Y.U.L.Rev. 1027 (1964). Compare N.Y.Negotiable Instruments Law § 6.

to the effective date of the Uniform Commercial Code in New Jersey. The parties agreed to a refinancing of the notes, and one new promissory note payable in 48 installments was executed after the effective date of the Code. On these facts, the court held the Uniform Commercial Code applicable to the refinanced transaction. No substitute note was given here, the date of the original note was merely extended and the subsequent guarantee, mortgage and promissory note did not purport to alter the 1964 instrument. These developments do not demonstrate the parties' intent to refinance or replace this instrument. Cf. Lack's Stores, Inc. v. Waisath, 464 S.W. 2d 220 (Tex.Civ.Ct.App.), rev'd in part on other grounds, 474 S.W.2d 444 (Tex. 1971).

█ We cannot agree with Appliance's suggestion that it is an "accommodation party" under the Negotiable Instruments Law. The relevant section, N.Y. Negotiable Instruments Law § 55 provides:

> An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party.

█ Our inquiry is whether Appliance can be considered to have received "value" for the instrument. See W. Britton, Bills and Notes, § 93, at 219 (2d ed. 1961). We do not accept the position that Appliance is to be deemed an accommodation party because it did not directly receive the proceeds of the note.[3] Such a restricted reading of § 55 would collide with the broad definition of "value" as "any consideration sufficient to support a simple contract," contained in § 51. Rather, any substantial benefit or consideration accruing directly or indirectly to Appliance by way of Westinghouse's extension of credit to Arista, is sufficient to deny Appliance accommodation status. Williams v. Reed, 48 Cal. 2d 57, 307 P.2d 353 (1957); Brayer v. Edell, 163 N.Y.S. 989 (Sup.Ct.1917); 1 J. Daniel, Negotiable Instruments § 216, at 277 (7th ed. T. Calvert 1933).

█ Both the District Court and the Referee (in dictum) believed that Appliance was so interested in the Westinghouse-Arista transaction, that it had received "value" within the meaning of § 55. The two business entities were commonly owned and controlled; Appliance was the packer and warehouser of the products Arista purchased from Westinghouse. The fact is that Appliance's own welfare, as well as Arista's, was dependent upon Westinghouse's extension of credit.[4] Clearly Appliance must be considered to have received "value" for the promissory note.

Affirmed.

---

3. The only authority relied upon to equate accommodation party status with nonreceipt of proceeds of the note is Salzberg v. Deutsch, 150 Misc. 870, 270 N.Y.S. 595 (Mun.Ct.1934). That case does not refer to the pertinent provisions of the Negotiable Instruments Law and there is no indication that the two co-signers of the note there received *any* benefit from the instrument.

4. In the May 26, 1965 guarantee given to Westinghouse, Appliance represented that it was "financially interested in the affairs of [Arista] or expect[ed] to derive advantage either directly or indirectly" from Westinghouse's extension of credit to Arista.