236 N.J. Super. 118 (1989)
564 A.2d 463
GOLDOME REALTY CREDIT CORPORATION, PLAINTIFF,
v.
CLIFFORD A. HARWICK, AND CYNTHIA M. HARWICK, (HUSBAND AND WIFE), FIRST NATIONAL BANK OF CENTRAL JERSEY, AND HOUSEHOLD FINANCE CORPORATION III, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Hunterdon County.
Decided July 21, 1989.
*120 Shari Seffer for plaintiff (Such & D'Alessandro, attorneys).
Raymond R. Siberine for defendant First National Bank of Central Jersey (Kunzman, Coley, Yospin & Bernstein, attorneys).
Howard W. Smith for defendant Household Finance Corporation III.
DIANA, A.J.S.C.
The instant matter is before this court on a motion by defendant, First National Bank of Central Jersey ("FNBCJ"), for summary judgment against defendant, Household Finance Corporation III ("HFC"), on the issue of priority. This priority battle between two lenders in a relatively routine foreclosure action raises issues about home-equity lines of credit which have not yet been addressed in published opinions by the courts of this State.
On December 4, 1986, Defendants Clifford and Cynthia Harwick executed a home-equity-revolving-line-of-credit note to FNBCJ and a mortgage on their home in Ringoes, New Jersey to secure payment of that note. The credit limit on the note was $40,000. The FNBCJ mortgage was recorded in the Hunterdon County Clerk's Office on December 23, 1986, in book 786 of mortgages at page 977.
Approximately six months later, on June 24, 1987, the Harwicks executed another home-equity-revolving-line-of-credit note to HFC. A mortgage on the Ringoes, New Jersey home was also executed to secure payment of the HFC note. This mortgage was recorded in the Hunterdon County Clerk's Office on June 26, 1987 in book 815 of mortgages at page 653.
Plaintiff, Goldome Realty Credit Corporation ("Goldome"), which held a first mortgage on the Harwick premises in Ringoes, filed a complaint in foreclosure against the Harwicks on November 16, 1988. By amendment to its complaint, Goldome added FNBCJ and HFC as party defendants. In response, FNBCJ filed an answer and cross-claim against defendants *121 Harwick and HFC. As to HFC, FNBCJ claims that the mortgage lien of HFC is subordinate to that of FNBCJ, because the HFC mortgage was recorded six months later.
HFC also filed an answer and cross-claims against the Harwicks for foreclosure and against FNBCJ for a determination that its lien has priority over FNBCJ's lien. The HFC cross-claim against FNBCJ is based on the fact that substantial advances were made by FNBCJ after the HFC mortgage was recorded.
By way of the instant motion, FNBCJ demands dismissal of the cross-claim by HFC and an order confirming the priority of the mortgage of FNBCJ over the mortgage of HFC. FNBCJ's motion is premised on N.J.S.A. 46:9-8.1 et seq. FNBCJ also relies on the certification of its recovery agent, Dominick A. Papera, which establishes the following facts:
a) advances up to $40,000.00 were obligatory rather than optional under the terms of the FNBCJ note,
b) FNBCJ received no notice from HFC that the Harwicks had executed a note and mortgage in favor of HFC, and
c) neither the Harwicks nor HFC had ever requested that the FNBCJ line of credit be terminated.
In support of its position HFC submits xerox copies of its check in the amount of $37,000, payable to FNBCJ. On the reverse side, this check bears the following endorsement: "For payment in full for Clifford Harwick Account #XXXXXXXX." The date stamp on this check and the records of FNBCJ reveal that this check was credited to the Harwicks' FNBCJ line of credit on or about July 1, 1987. Although HFC contends that this check was intended to payoff the Harwick account in full, it can produce no documentary evidence that FNBCJ was ever notified that this payment was intended to terminate the Harwicks' line of credit. In addition, the $37,000 payment was not sufficient to pay off the FNBCJ line of credit. After crediting $37,000 to the Harwicks' account, there was still a debt of $2,564.92 owed by the Harwicks to FNBCJ.
*122 FNBCJ argues that because the line of credit was not paid off in full and because no requests were made to terminate the line of credit or discharge the mortgage, it properly extended further credit to the Harwicks under the terms of its note and mortgage, up to the amount of their credit limit.
The relevant provisions of this note and mortgage are clear. The note provides that "[FNBCJ] is absolutely required to make loan advances to [the Harwicks] up to the amount of [the Harwicks'] credit line limit when and if [the Harwicks] want them." The mortgage provides that the
Bank now holds and will continue to hold a mortgage on the property until the Agreement and Note made by Borrower is paid in full and the Agreement is terminated. When Borrower pays in full the amount owed to the Bank plus interest in accordance with the Agreement and Note, then the Bank's mortgage on the property will no longer exist.
HFC makes three arguments in opposition to this motion:
1. that FNBCJ's reliance on N.J.S.A. 46:9-8 is misplaced, as that statute deals only with purchase money mortgages,
2. that FNBCJ was obligated to discharge its mortgage upon receipt and payment of the $37,000 check marked "For payment in full ..." and,
3. that HFC is entitled to priority under the doctrine of equitable subrogation.
As to its first argument, HFC incorrectly asserts that FNBCJ relies on N.J.S.A. 46:9-8. FNBCJ's reliance is on N.J.S.A. 46:9-8.1 et seq. No reliance is placed on N.J.S.A. 46:9-8, as that statute is clearly not analogous to the instant situation. While paragraph 8 deals with the priority of purchase money mortgages over judgment creditors, paragraphs 8.1 and 8.2 specifically deal with "mortgage loan[s] ... subject to modification."
Paragraph 8.1 defines the term "modification" as "... (2) an advance made pursuant to a line of credit." With respect to these types of modifiable mortgages, paragraph 8.2 provides that:
... notwithstanding any other law to the contrary, the priority of the lien of a mortgage which is by its terms subject to modification, ... shall relate back to and remain as it was at the time of the recording of the original mortgage as if the modification was included in the original mortgage or as if the modification occurred at the time of the recording of the original mortgage.
*123 It would appear that this statute is dispositive and provides for the priority of FNBCJ's mortgage over that of HFC, despite the fact that numerous advances were made after the recording of HFC's mortgage.
The general rule to be applied in situations such as this is plainly stated by Cunningham and Tischler.
It is well settled that a duly recorded advance money mortgage, where the making of the advances is obligatory on the mortgage, creates a valid lien for the full amount actually advanced thereunder (up to the stated maximum) as against all subsequent claims,... even if the advance money mortgagee continues to make advances after he has actual notice of the subsequent claim. Thus the advance money mortgagee has priority over all subsequent judgment creditors, purchasers, and mortgagees even as to advances made after he had actual notice of subsequent judgments against, or conveyances by, the mortgagor. [29 N.J.Practice (Cunningham & Tischler, Law of Mortgages) (1975) § 111 at ___; citations omitted]
HFC cites the case of United Orient Bank v. Lee, 208 N.J. Super. 69 (App.Div. 1986) to buttress the argument that, upon accepting payment, the mortgagee, FNBCJ, had a duty to pay off the mortgage. In the United Orient Bank case the payment at issue was accompanied by a cover letter which indicated the payment's purpose and requested return of the mortgage for cancellation. Prior to mailing the check, attorneys for the Lees had requested a pay off figure from the bank. Thus, the bank was found by the court to be fully aware of the terms of the payment and bound to comply with the Lees' instructions. However, unbeknownst to the Lees, United Orient Bank applied the funds sent to it towards another debt owed by the Lees. Then, when the Lees failed to make payments on the mortgage and note, the bank declared a default and began an action to foreclose.
In the instant case, it is uncontroverted that the only notice received by the FNBCJ was the actual endorsement on the check. Moreover, this check was insufficient to pay off the full amount of the mortgage. It must be remembered that the terms of the FNBCJ note and mortgage, as outlined above, are absolutely clear. Namely, until the principal amount due, together with interest and other charges, is paid in full, FNBCJ is *124 "absolutely required to make loan advances to [the Harwicks] up to the amount of [their] credit line limit if and when [they] want them," emphasis supplied, and will not discharge its mortgage.
In the case sub judice, the moving party has demonstrated, by competent evidence, that FNBCJ was not made aware by HFC or the Harwicks that the FNBCJ line of credit was being refinanced. HFC does not assert that it ever made an attempt to ascertain the amount necessary to pay off the FNBCJ line of credit. The FNBCJ mortgage was recorded and gave notice to HFC of the Harwicks' prior indebtedness. To this court's knowledge, HFC did not even inquire into the terms of the FNBCJ note and mortgage to determine how FNBCJ's obligation to make advances was terminable. Had HFC done these things, it would have learned that despite HFC's endorsement on the $37,000 check, under the terms of FNBCJ's agreement with the Harwicks, the sum of $37,000 was insufficient to pay the FNBCJ line of credit in full, to release FNBCJ from its obligation to continue to make advances, or to permit FNBCJ to discharge its mortgage.
New Jersey does not follow the "scintilla of evidence" rule. "If the facts produced by the opponent of a motion for summary judgment are of an insubstantial nature ... summary judgment may be awarded." Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 75 (1954). Where the moving party demonstrates a prima facie right to summary judgment, the opponent of a motion is required to show by competent evidential material that a genuine issue of material fact exists. Robbins v. Jersey City, 23 N.J. 229, 241 (1957). The standards of decision governing the grant or denial of a summary judgment are to be applied with discriminating care so as not to defeat a summary judgment motion where the moving party is justly entitled to a judgment. Judson, supra, 17 N.J. at 74-75 Thus, I am not persuaded by HFC's argument, *125 with respect to the endorsed $37,000 check, that a material issue of fact exists.
As to the subrogation issue, I find the Trus Joist and Equity Savings and Loan cases cited by HFC to be inapposite. See Trus Joist Corp. v. Nat'l Union Fire Ins. Co., 190 N.J. Super. 168 (App.Div. 1983), rev'd on other gnds 97 N.J. 22 (1984); and Equity Savings and Loan Assn. v. Chicago Title Ins. Co., 190 N.J. Super. 340 (App.Div. 1983). In the Trus Joist case, the Appellate Division stated that:
There is no doubt that a mortgagee who negligently accepts a mortgage without knowledge of intervening encumbrances will subrogate to a first mortgage with priority over the intervening encumbrances to the extent that the proceeds of the new mortgage are used to satisfy the old mortgage. This result is reached so that the intervening encumbrances not be unjustly enriched at the expense of the new mortgagee. [190 N.J. Super. at 179.]
In the Equity S & L case, the Appellate Division required, not only unjust enrichment, but a finding of fraud as justification for the equitable subrogation of Equity's mortgage to Chicago's lien. In that case, Equity had acquired its priority as a result of Equity and Spencer, a subsequent mortgagee, having been defrauded as to the payment of prior mortgages with proceeds that they had advanced. Based on the fact that the Spencer proceeds were traceable and the Equity proceeds were not, the court held that "Equity's windfall may be viewed as a product of money stolen from Spencer." 190 N.J. Super. at 343.
In the instant case, I find no unjust enrichment of FNBCJ at the expense of HFC. Despite HFC's payment, FNBCJ remained bound under its line of credit agreement to continue making advances to the Harwicks. It fulfilled its obligation to the Harwicks and has been left with a note that is in default. Although the HFC proceeds are traceable to FNBCJ, I cannot characterize this as a "windfall." Under a revolving line of credit such as this a payment of principal by the mortgagor simply frees up more credit which the mortgagee is obligated to extend, even to the mortgagee's own detriment.
*126 In the last sentence of his letter brief, counsel for HFC writes that "[a]lthough HFC was negligent in not following up to see that the FNBCJ mortgage was paid and cancelled, FNBCJ was also negligent in making subsequent advances after accepting a check endorsed `payment in full'." I disagree with the conclusion that FNBCJ was negligent. FNBCJ had received no inquiry from Harwick or HFC, no cover letter or specific directions have been revealed to the court and FNBCJ claims it had no notice of HFC's note and mortgage. Under these circumstances, FNBCJ did what it was contractually obligated to do  it continued making advances to the Harwicks.
Subrogation is an equitable doctrine, applied only in the exercise of an equitable discretion by the courts. See Schechner v. Oriental Holding Co., 107 N.J. Eq. 600 (Ch. 1931). I conclude that it would be an abuse of this discretion to reward HFC for its admitted negligence. This case is just one instance in the realm of new and innovative lending arrangements where it would behoove subsequent mortgagees to be more circumspect in their dealings with one another. It is not an appropriate case for the intervention of a court of equity.
Based on the foregoing, summary judgment is hereby granted in favor of FNBCJ dismissing the cross-claim of HFC and establishing the priority of FNBCJ's mortgage over that of HFC.