619 A.2d 614

OPTOPICS LABORATORIES CORPORATION, A DELAWARE CORPORATION, PLAINTIFF–RESPONDENT, v. SHERMAN LABORATORIES, INC., A LOUISIANA CORPORATION, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 27, 1992—Decided January 19, 1993.

Before Judges MICHELS, BAIME and WALLACE.

*John P. Morris* argued the cause for appellant.

*Jeffrey H. Nicholas* argued the cause for respondent (*Antheil and Nicholas,* attorneys; *Mr. Nicholas,* of counsel and on the brief).

The opinion of the court was delivered by

**MICHELS, P.J.A.D.**

Defendant Sherman Laboratories, Inc. (Sherman Laboratories) challenges an order of the Law Division granting a partial summary judgment that awarded plaintiff Optopics Laboratories Corporation (Optopics) the total sum of $124,696.12 for principal and interest due under a loan agreement.

The essential factual background and procedural history giving rise to this appeal follow. Optopics and Sherman Laboratories were both engaged in the production and sale of sterile ophthalmology products. In April 1983, Optopics acquired certain assets of Ketchum Laboratories, Inc., which previously had produced products for Sherman Laboratories. As Optopics wanted to continue manufacturing products for Sherman Laboratories, the parties entered into a Manufacturing License Agreement on February 26, 1985, which detailed Optopics' use, marketing, sale and/or manufacture of Sherman Laboratories products. The Agreement was subsequently amended in April 1985 to add another product of Sherman Laboratories. Thereafter, on May 21, 1985, the parties entered into a Loan Agreement under which Optopics advanced Sherman Laboratories $90,000 in four separate transactions over the course of the next year. That Agreement provided, in pertinent part:

### Loan

1.  Optopics will loan Sherman no more than $200,000 ("the Sherman Loan") under the terms and conditions herein stated. Except as provided in the first sentence of Section 8, $40,000 shall be paid to Sherman upon the execution of this Agreement and the remainder promptly as such funds become available to Optopics. The total of the Sherman Loan shall consist of the amount paid to Sherman plus the amount withheld for deposit to the Interest Fund (Sherman Loan Total).

\*    \*    \*    \*    \*    \*    \*    \*

### Interest

5.  Sherman will pay Optopics interest monthly on the Sherman Loan at the rate of Chase Manhattan Prime, plus 1%, on a per annum basis. Such Chase Manhattan Prime shall be the one in effect on the first New York Banking Day of the month as of 5:00 p.m. EDT (EST).

6. Sherman will pay Optopics interest on the first day of each month, for that month, with the Chase Manhattan Prime Rate applicable thereto being the one for the month immediately prior thereto (Interest Due Date).

The purpose of the loan, as indicated in the Agreement, was to allow Sherman Laboratories to "purchase and install production equipment, to erect a warehouse and to enlarge and improve certain existing production facilities." Further, the Agreement provided that Sherman Laboratories was to issue Optopics certain shares of Sherman Laboratories stock as other consideration for the loan. Optopics' first loan payment of $40,000 was executed on May 21, 1985, along with the Agreement, and it was evidenced by a Promissory Note. However, the additional $50,000.00 which was loaned to Sherman Laboratories by Optopics was not evidenced by any promissory notes. The Promissory Note executed with the Agreement contained the following pertinent provisions:

If any installment of principal or interest is not promptly paid when due and the interest fund has been depleted after Optopics has acted fully and completely to comply with the requirements of that certain "Agreement" executed by and between Sherman and Optopics on May 21, 1985, then the entire debt, at the option of the holder hereof, shall at once mature and become due and payable.

In case this note should be placed in the hands of an attorney at law after its maturity to institute legal proceedings or interest, or to protect the interests of the holder hereof, or in case the same should be placed in the hands of an attorney for collection, compromise, or other action, Sherman Laboratories, Inc. agrees to pay the reasonable fees of the attorney who may be employed for that purpose.

As to interest payments, the Loan Agreement provided for the creation of an "Interest Fund—Money Market Account." This account was to be for the benefit of Sherman Laboratories, and it was to be sustained by funds which Optopics would withhold from each loan disbursement in the amount of the monthly interest projected to come due on the loan. Additionally, particular provisions were included in the Agreement which addressed the separate scenarios wherein the account either approached exhaustion or became entirely exhausted. Specifically, the Agreement provided:

### Interest Fund—Money Market Account

8. Optopics will withhold from each disbursement by Optopics to Sherman on the Sherman Loan an amount equal to the projected monthly interest payments thereafter remaining on the Sherman Loan until one (1) year from the date of this Agreement at the then current Chase Manhattan Prime rate, plus 1% on an annual basis; such amount shall be at least $4,400.00 on the first disbursement and shall constitute an "Interest Fund". All amounts in the Interest Fund will be deposited to an Optopics titled Money Market Account, which shall be the property of Sherman (subject only to the administration of Optopics), with interest inuring to the benefit of Sherman. The Interest Fund will be used by Optopics solely to pay interest to Optopics on the Sherman Loan. Optopics will issue checks to Optopics from the Money Market Account solely for interest due on the Sherman Loan on the first day of each month. Optopics will pay, in turn, interest to Lenders of monies to Optopics. Optopics will send Sherman a copy of the statement from the Money Market Account within seven days after receipt.

9. Before the Interest Fund is exhausted, thereby making it impossible for Optopics to pay interest to Optopics on the Sherman Loan, it will be the duty of Optopics to give Sherman at least thirty (30) days prior notice of such impending exhaustion and to advise Sherman of the amount required to supplement the fund. If Sherman fails to adequately supplement the Interest Fund before the fund is exhausted, then Sherman will issue Sherman stock to Optopics at a conversion price of $.25 per share on the 10th day after the defaulted Interest Due Date in exchange for any unpaid but accrued interest on the Sherman Loan resulting from such failure to supplement after due notice to Sherman.

The interest fund apparently was exhausted in February 1987. Thereafter, Sherman Laboratories paid interest on the $90,-000.00 loan principal for the period of February and March 1987 and then ceased all interest payments.

By April 1986, the United States Food and Drug Administration (USFDA) had not approved defendant's new product, a circumstance which entitled Optopics, under the terms of the Agreement, to demand repayment of the Sherman Laboratories loan. Consequently, by letter dated July 2, 1987, Optopics demanded repayment of the $90,000.00 loan plus interest. As to demand for payment, the Agreement provided:

### An Event of Payment

a. Optopics may initiate, in its sole discretion, to demand payment in full of the principal amount of the Sherman Note on the 90th day after notice to Sherman in the event the USF & DA advises Sherman that approval will not be granted to SPC II; provided, however, that Sherman must pay the

Sherman Note one (1) year from the date of this Agreement (but not before), if The Event of Conversion has not occurred prior to such payment. Payment under either such condition shall constitute "The Event of Payment."

In February 1988, as a result of Sherman Laboratories' failure to repay the loan pursuant to its demand, Optopics instituted this action. Pertinent to this appeal, in the First of Six Counts contained in its Complaint, Optopics sought $90,-000.00 as principal and interest due under the Agreement, as well as attorneys' fees and costs. Sherman Laboratories denied generally that it was under any liabilities to Optopics, and specifically denied "that any loan agreement ... was ever entered into between [the parties]." However, Sherman Laboratories admitted that it had "executed an agreement dated May 21, 1985 with [Optopics]." Additionally, as a separate defense, Sherman Laboratories claimed that any sum owing to Optopics "is offset by amounts which [Optopics] owes to [it] pursuant to royalty payments under an agreement dated February 26, 1985." Sherman Laboratories also counterclaimed, seeking royalty payments, damages, costs and attorneys' fees under the Manufacturing License Agreement, which Optopics denied owing.

After discovery was complete, the trial court granted Optopics' motion for partial summary judgment, awarding Optopics $124,696.12 for principal and interest due under the Agreement, plus attorneys' fees, the amount of which were to be determined later. The remaining issues were tried before a jury, which returned a verdict in favor of Optopics (1) for $7,218.10 for mistaken royalty payments paid to Sherman Laboratories and (2) on Sherman Laboratories' counterclaim. The trial court thereupon entered judgment dismissing Sherman Laboratories' counterclaim, and awarding Optopics the sum total of $133,-429.00. This figure consisted of the previous award of $124,-696.12 due under the Agreement, the $7,218.10 awarded by the jury and prejudgment interest. This appeal followed.

Sherman Laboratories contends that the trial court erred in compelling it to repay $90,000 under the Agreement. It argues

essentially that the partial summary judgment had the effect of removing from the jury's consideration the existence of Optopics' claim for repayment of the $90,000 loan, and that had the jury known of the existence of this loan, along with the fact that the loan would have been entirely offset by its claim for royalties under the Manufacturing License Agreement, the jury may have been more inclined to grant it a judgment for such royalties. We disagree and affirm.

It is fundamental that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." *R.* 4:46–2. We noted in *Gurski v. State Police Dept.*, 242 *N.J.Super.* 148, 159–160, 576 *A.*2d 292 (App. Div.1990), that:

> The summary judgment procedure "is designed to provide a prompt, businesslike and inexpensive method of disposing of any cause which a discriminating search of the merits in the pleadings, depositions and admissions on file, together with the affidavits submitted on the motion clearly shows not to present any genuine issue of material fact requiring disposition at a trial." *Judson v. Peoples Bank & Trust Co.*, 17 *N.J.* 67, 74, 110 *A.*2d 24 (1954). Nonetheless, because summary judgment is a stringent remedy, the moving parties' burden on such a motion is "to exclude any reasonable doubt as to the existence of any genuine issue of material fact.... All inferences of doubt are drawn against the movant in favor of the opponent of the motion. The papers supporting the motion are closely scrutinized and the opposing papers indulgently treated." *Id.* at 74–75, 110 *A.*2d 24. *See also Brenner and Co. v. Perl*, 72 *N.J.Super.* 160, 166, 178 *A.*2d 19 (App.Div.1962). If there is the slightest doubt as to the existence of a material issue of fact, a summary judgment motion should be denied. *Garley v. Waddington*, 177 *N.J.Super.* 173, 179, 425 *A.*2d 1084 (App.Div.1981); *Linn v. Rand*, 140 *N.J.Super.* 212, 216, 356 *A.*2d 15 (App.Div.1976). *See also United Advertising Corp. v. Metuchen*, 35 *N.J.* 193, 195–196, 172 *A.*2d 429 (1961).
>
> Thus, in *Ruvolo v. American Casualty Co.*, 39 *N.J.* 490, 499, 189 *A.*2d 204 (1963), our Supreme Court summarized the standard governing the grant or denial of summary judgment, commenting:
>
> > It is a matter of common knowledge that such judgments are to be granted with extreme caution. The moving papers and the pleadings are to be considered most favorably to the party opposing the motion. All doubts are to be resolved against the movant. It has been said on the federal scene (after whose rule our own is patterned) that a litigant has the right to trial

where there is the slightest doubt as to the facts. *Peckham v. Ronrico Corp.*, 171 *F.*2d 653, 657 (1 Cir.1948); *Doehler Metal Furniture Co. v. United States*, 149 *F.*2d 130, 135 (2 Cir.1945). If there is such a doubt it cannot be said the movant's case is unequivocally established or that palpably there is no genuine issue as to any material fact challenged. (Citation omitted).

The point, of course, is that summary judgment should not be granted unless the right thereto appears so clearly as to leave no room for controversy.

*See also Henschke v. Borough of Clayton*, 251 *N.J.Super.* 393, 398, 598 *A.*2d 526 (App.Div.1991); *McDermott v. TENDUN Constructors*, 211 *N.J.Super.* 196, 205–06, 511 *A.*2d 690 (App. Div.), *certif. denied*, 107 *N.J.* 43, 526 *A.*2d 134 (1986). "Where the moving party demonstrates a prima facie right to summary judgment, the opponent of a motion is required to show by competent evidential material that a genuine issue of material fact exists." *Goldome Rlty. Cred. Corp. v. Harwick*, 236 *N.J.Super.* 118, 124, 564 *A.*2d 463 (Ch.Div.1989) (citing *Robbins v. Jersey City*, 23 *N.J.* 229, 241, 128 *A.*2d 673 (1957)); *James Talcott, Inc. v. Shulman*, 82 *N.J.Super.* 438, 443, 198 *A.*2d 98 (App.Div.1964); *Heljon Management Corp. v. Di Leo*, 55 *N.J.Super.* 306, 312, 150 *A.*2d 684 (App.Div.1959). "This is to afford litigants protection against groundless claims and frivolous defenses." *Heljon, supra*, 55 *N.J.Super.* at 312, 150 *A.*2d 684. *See also Robbins, supra*, 23 *N.J.* at 241, 128 *A.*2d 673. "[T]he standards [governing the disposition of a summary judgment motion] are to be applied with discriminating care so as not to defeat a summary judgment if the movant is justly entitled to one." *Judson v. Peoples Bank & Trust Co. of Westfield*, 17 *N.J.* 67, 74, 110 *A.*2d 24 (1954). *Accord Harwick, supra*, 236 *N.J.Super.* at 124, 564 *A.*2d 463.

"[I]f the opposing party offers no affidavits or matter in opposition, or only facts which are immaterial or of an insubstantial nature, a mere scintilla, 'fanciful, frivolous gauzy or merely suspicious,' he will not be heard to complain if the court grants summary judgment, taking as true the statement of uncontradicted facts in the papers relied upon by the moving party, such papers themselves not otherwise showing the existence of an issue of material fact." *Judson, supra*, 17 *N.J.* at

75, 110 *A.*2d 24 (citations omitted). However, "it is not to be concluded that palpably no genuine issue as to any material fact exists solely because the evidence opposing the claimed fact strikes the judge as being incredible. Issues of credibility are ordinarily for the trier of fact, and the judge does not function as a trier of fact in determining a motion for summary judgment." *Id.* (citation omitted). As noted by this court:

Summary judgment should not be granted where the adjudication of such a motion would constitute what is in effect a trial by affidavits on issues of fact. Although summary judgment serves the valid purpose in our judicial system of protecting against "groundless claims and frivolous defenses," it is not a substitute for a full plenary trial. Moreover, the court should be particularly hesitant in granting summary judgment where questions dealing with subjective elements such as intent, motivation and duress are involved. *Ruvolo v. American Cas. Co.,* 39 *N.J.* 490, 500 [189 *A.*2d 204] (1963); *Judson, supra,* 17 *N.J.* at 76 [110 *A.*2d 24]; *Exxon Corporation v. Wagner,* 154 *N.J.Super.* 538, 541 [382 *A.*2d 45] (App.Div.1977); *Allen v. Planning Bd. Tp. of Evesham,* 137 *N.J.Super.* 359, 363–364 [349 *A.*2d 99] (App.Div.1975). In short, summary judgment should be denied unless the right thereto appears so clearly as to leave no room for controversy. [*Shanley & Fisher, P.C. v. Sisselman,* 215 *N.J.Super.* 200, 211–12 [521 *A.*2d 872] (App.Div.1987)].

"Of particular import, however, is the word genuine. An opponent to a summary judgment motion cannot defeat the motion by raising a misguided subjective belief ... to create the existence of a genuine issue of material fact." *Swarts v. Sherwin–Williams Co.,* 244 *N.J.Super.* 170, 178, 581 *A.*2d 1328 (App.Div.1990) (affirming summary judgment despite conflict between a party's affidavit and the previous assertions of that party regarding intent to waive a right).

Furthermore, "the existence of a counterclaim does not bar a proceeding for summary judgment on the original claim where the counterclaim is shown to be sham, frivolous, or without merit." P.A. Agabin, Annotation, *Summary Judgment— Counterclaim,* 8 *A.L.R.*3d 1361, 1364 (1966); 73 *Am.Jur.*2d *Summary Judgment* § 31 at 759–61 (1974); *see e.g., Burns Trading Corp. v. Blue Front Market,* 17 *N.J.Super.* 61, 70, 85 *A.*2d 320 (Law Div.1951). It has also been held that a counterclaim in excess of the original claim is not an automatic bar to summary judgment. Annotation, *supra,* 8 *A.L.R.*3d § 7(c) at

165–66 (Supp.1992). Thus, courts have not hesitated to grant summary judgment where, although the counterclaim relates somewhat to the original claim, it "is really separate and distinct and involves alleged damages of a completely different character and which arise out of different circumstances than plaintiff's complaint." *Associates Financial Serv., Etc. v. Knapp,* 422 *N.E.*2d 1261, 1265 (Ind.Ct.App.1981) (holding that while a counterclaim alleging negligence and fraud was "tangentially related" to the original action on a debt, it did not serve to bar a grant of summary judgment on that action); *Pate v. Merchants Nat. Bank of Mobile,* 409 *So.*2d 797 (Ala. 1982) (summary judgment upheld in action by bank to collect money owed on promissory note where defendant's counterclaim for conversion of funds was preserved); *Logan v. Williamson & Co.,* 64 *A.D.*2d 466, 409 *N.Y.S.*2d 883 (N.Y.App.Div. 1978), *appeal dismissed,* 46 *N.Y.*2d 996, 416 *N.Y.S.*2d 242, 389 *N.E.*2d 837 (N.Y.1979) (court upheld the grant of creditor's summary judgment motion but severed debtor's related but independent counterclaim which arose out of the same general transaction, but which did not constitute a defense to creditor's cause of action on "an instrument for money only.") *Rose v. Genesee Monroe Racing Ass'n, Inc.,* 52 *A.D.*2d 1091, 384 *N.Y.S.*2d 316, 317 (N.Y.App.Div.1976) (counterclaim insufficient to defeat a summary judgment motion where allegations in counterclaim were "not sufficiently related to the substance of plaintiff's claim...."); *Engebregson v. Bank of Nevada,* 92 *Nev.* 548, 554 *P.*2d 1121 (Nev.1976) (holding summary judgment for bank was appropriate, in an action on notes in which defendant did not contest liability, despite the existence of permissive counterclaims seeking more money than due on notes); *see also Plymouth Rock Fuel Corp. v. Leucadia, Inc.,* 100 *A.D.*2d 842, 474 *N.Y.S.*2d 79, 81 (N.Y.App.Div.1984); *Motz v. Landmark First Nat. Bank,* 154 *Ga.App.* 858, 270 *S.E.*2d 81, 84 (Ga.Ct.App.1980); *Mock v. Canterbury Rlty. Co.,* 152 *Ga.App.* 872, 264 *S.E.*2d 489, 491–94 (Ga.Ct.App.1980); *Fagala*

*v. Morrison,* 146 *Ga.App.* 377, 246 *S.E.*2d 408, 410 (Ga.Ct.App. 1978).

■ Application of these principles here compels the conclusion that the trial court properly granted summary judgment in favor of Optopics on the First Count of the Complaint. Optopics clearly established a *prima facie* right to summary judgment on a debt due and owing. As to the Agreement, Sherman Laboratories and its president, Guy Sherman, admitted that Optopics loaned Sherman Laboratories $90,000. Mr. Sherman also acknowledged his signature on the loan. Further, Sherman Laboratories admitted that the Agreement provided for interest to be paid monthly. Finally, Sherman Laboratories admitted "that Optopics demanded payment of the loan of $90,000." Thus, Optopics clearly established that the debt was due and owing, warranting the granting of summary judgment on the First Count of the Complaint.

Sherman Laboratories' belated assertion of failure of consideration based on a claim that the Agreement was executed as partial consideration for the grant of the right to use, market, sell or manufacture its products, pursuant to the Manufacturing License Agreement, did not create a genuine issue of material fact so as to bar summary judgment on the count for debt. The Agreement clearly stated that the purpose of the loan was for the purchase and improvement of certain capital equipment and facilities. Further, there was no mention of any loan in the Manufacturing License Agreement, which may have been drafted as early as 1983 or 1984 and thus, years before the Loan Agreement.

Additionally, Sherman Laboratories did not offer any evidence, such as correspondence between the parties, indicating such an intent or even suggesting that the Loan Agreement was executed as partial consideration for the claimed grant. Instead, both agreements refer to Sherman Laboratories' new product, which was the impetus of the amended agreement of April 1985. Furthermore, the Loan Agreement refers to the

Manufacturing License Agreement and the subsequent amendment to that agreement, when setting forth the parties' relationship. Despite the existence of these references, and Sherman Laboratories' ample opportunity to explain any contrary intent, Mr. Sherman, during his deposition, testified that the Manufacturing License Agreement "was a total and separate agreement" from the later Agreement, and that the Manufacturing License Agreement did not contain a loan provision. Therefore, given the nature of the documents themselves, and all of the evidence presented to the trial court, Optopics' right to summary judgment was plainly established.

Sherman Laboratories sought to defeat that right by submitting an affidavit which directly contradicted previous deposition testimony. However, the trial court apparently afforded this affidavit little, if any, credence. Its decision in this regard was sound. Mr. Sherman was carefully questioned on the pivotal issue, and the facts surrounding the execution of the documents which he had signed were clearly known to him during his deposition. Additionally, Sherman Laboratories has failed to offer any explanation for Mr. Sherman's sudden departure from his previous testimony, or his failure to even make reference to it. As a matter of fact, Sherman Laboratories' claim that the Loan Agreement was part of the consideration for the Manufacturing License Agreement would violate the Parole Evidence Rule, as the latter agreement contained an express "integration provision." Finally, it does not appear from the record that Mr. Sherman was confused or misspoke during his deposition. In the circumstances, Mr. Sherman's contradictory affidavit was not trustworthy or credible, and did not create a genuine issue of material fact which would operate to bar summary judgment.

Moreover, Sherman Laboratories' claim that "summary judgment was improper given that there existed a genuine issue of material fact with respect to the amount of interest owed on the principal outstanding as well as [Optopics'] entitlement under the contract being limited to stock only," is also without merit.

Sherman incorrectly contends that the interest calculation "was not substantiated by any documentation regarding the prime rate." First, Optopics provided an interest calculation attached to the certification of Jeffrey H. Nicholas. Second, in response to Sherman Laboratories' allegations that no documentation was provided, which were submitted in opposition to the summary judgment motion, Optopics provided a supplemental certification detailing the prime commercial lending rate at Chase Manhattan Bank. Therefore, contrary to Sherman Laboratories' claim, the amount of interest due was not in dispute, and did not create a genuine issue as to a material fact so as to preclude the granting of partial summary judgment.

■ Finally, we are satisfied that the trial court properly awarded interest in the form of cash and not stock. *Cf. Ware, Admr. v. McMurray*, 74 *N.J.L.* 37, 38, 64 *A.* 967 (Sup.Ct.1906). In *Ware*, the decedent contracted with defendant to perform certain services in exchange for $5,000 in stock. In an action by the administrator of the decedent's estate on the contract, the former Supreme Court stated:

> Where compensation is to be made in some other thing than money, and there is a refusal to comply with the agreement to compensate in the specific way provided, the plaintiff is entitled to recover as compensation what the specific thing which he was to receive is worth. This is to be ascertained in the usual way of arriving at the value of real and personal property. *Hinchman v. Rutan*, 2 *Vroom* 497. [*Ware, supra*, 74 *N.J.L.* at 38, 64 *A.* 967].

Additionally, it is quite settled that "[s]alutary principles of justice inhibit the enforcement of a promise when the counter-promise has been broken." *Woodhouse v. Woodhouse*, 15 *N.J.* 550, 556, 105 *A.*2d 517 (1954). *See also Nolan v. Lee Ho*, 120 *N.J.* 465, 472, 577 *A.*2d 143 (1990).

Here, no determination as to the value of the stock need be made, as the Loan Agreement clearly set forth an interest rate which was then converted by a specified ratio into stock. Consequently, when Sherman Laboratories breached its Agreement with Optopics, and refused to repay the loan in accor-

dance with its terms, interest due on the principle was properly awarded in the form of money and not stock.

Affirmed.