244 N.J. Super. 170 (1990)
581 A.2d 1328
DANIEL C. SWARTS, PLAINTIFF-APPELLANT,
v.
THE SHERWIN-WILLIAMS COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 1990.
Decided October 16, 1990.
*172 Before Judges PETRELLA and MUIR, Jr.
Corinne L. McGovern argued the cause for appellant (DeLeonardis, McGovern & Dermody, attorneys).
Jerry P. Sattin argued the cause for respondent (McCarter & English, attorneys; John L. McGoldrick, of counsel; David S. Osterman and Jerry P. Sattin, on the brief).
The opinion of the court was delivered by MUIR, Jr., J.A.D.
This appeal requires us to determine whether plaintiff executed a valid waiver of his age discrimination rights under the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-12, when he signed a release and covenant not to sue in return for special severance pay allowance and at the same time retired from the defendant's employment. The trial judge found plaintiff knowingly and voluntarily signed the waiver, found the waiver supported by valid consideration, and granted summary judgment dismissing plaintiff's complaint. We affirm and, in doing so, adopt a totality of the circumstances approach for determining the validity of such waivers.

*173 I.
The essential facts are undisputed. On December 9, 1963, at age 39, plaintiff went to work as an assistant foreman at defendant's production and paint filling department in Newark, New Jersey. Shortly thereafter, he became foreman and worked at the Newark facility until a 1969 promotion led to a transfer to a Georgia manufacturing and packing facility. In 1972 he received another promotion and returned to Newark. By 1981 he had risen to Distribution Manager earning over $25,000 annually. During his employment with defendant, he enhanced his Newark Diesel Institute degree by taking college courses in personnel management.
In 1981 plaintiff's standing with defendant took a turn for the worse. A new supervisor found plaintiff short on qualifications for his then management position. The supervisor offered plaintiff a demotion at the Newark facility, which plaintiff accepted. The supervisor also put plaintiff on a non-raise status.
Shortly thereafter, defendant transferred plaintiff to South Plainfield to manage a smaller warehouse. Subsequently, defendant again transferred plaintiff to another facility in Piscataway.
As the result of his demotion and non-raise status, plaintiff sought a personnel department review of his treatment. In a six-page handwritten letter, plaintiff described his employment history. In the letter he pleaded, "Was there anything I could do to further prove myself and at least be left alone until retirement time." Plaintiff ended the letter by saying, "I firmly believe this is a pure case of age discrimination." The letter did not result in any change in plaintiff's employment circumstances.
The employment circumstances were influenced by defendant's decision to consolidate its east coast operation into one facility in Hunt Valley, Maryland, and to reduce the number of east coast employees. In August plaintiff rejected an opportunity *174 for promotion, salary increase, and retransfer to Newark to close down the Newark plant. At the time he resided in a retirement community in Lakewood. Plaintiff and his wife discussed the longer drive from Lakewood to Newark, whether the salary increase was worth the extra commute, and the issue of going to a job that had a definite end. He rejected the transfer.
Shortly after the announcement about consolidation, defendant invited its employees interested in transferring to Hunt Valley to sign up for interviews. Plaintiff knew about the invitation. In fact, he saw and greeted other company employees who came to Piscataway for the purpose of conducting the interviews.
Plaintiff never requested an interview nor did he advise any company employee that he was interested in transferring to Hunt Valley. He explained this failure by stating the company had always come to him about promotion or demotion and, "I was holding back, awaiting my turn."
When his turn never came, plaintiff explored retirement. On February 13 or 14, 1985, plaintiff spoke with a personnel administrator about health benefits for his wife if he retired. The administrator at the time handed him a document entitled Benefits Analysis-Separation Agreement (Agreement) which, among other things, contained the waiver. At the same time, plaintiff received a document explaining benefits applicable to all salaried employees who separated from the defendant. The document outlined an early separation program for salaried employees. Under the terms of the program, if plaintiff accepted voluntary separation, he received 21 weeks' severance pay. The document also outlined options available to eligible employees who took early retirement. It made clear the special separation benefits were in addition to any benefits an employee had under defendant's retirement program.
On February 22, 1985, after some minor adjustments to it, plaintiff signed the agreement which indicated his last day of *175 employment would be March 31, 1985. The waiver provision read:
In consideration of the special separation pay and other gratuitous benefits herein extended to you by Sherwin-Williams, your signature to the attached copy of this letter will constitute an agreement between you and Sherwin-Williams and is a full release and is in full satisfaction of any and all claims or demands that you now have or may have in the future against Sherwin-Williams or any of its employees or any of its subsidiaries or former subsidiaries arising either directly or indirectly out of your present or past employment relationship with Sherwin-Williams or any of its subsidiaries or former subsidiaries, except for all rights and claims you may have in connection with your status as a former employee under The Sherwin-Williams Company Salaried Employees' Retirement Plan.
Plaintiff read and understood the waiver before he signed it. He acknowledged no one ever told him to sign or pressured him to sign the waiver. Plaintiff neither sought nor was told by defendant he could seek legal advice before he signed the waiver and release.
On deposition when asked whether he retired or considered retirement, plaintiff responded, "Yes I retired." His early retirement gave him a little over 95 percent full pension with other related benefits. The record discloses no time when plaintiff asserted his right to continue employment nor disputed with any representative of defendant that he was being forced to retire. Indeed, he received a letter of congratulations from an executive of defendant and was given a retirement party at which he received a watch. Plaintiff retired March 31, 1985.
On September 3, 1985, plaintiff filed an age discrimination complaint with the New Jersey Division of Civil Rights. In the verified complaint he stated, "I was involuntarily terminated." The record does not disclose the disposition of that complaint.
On November 2, 1987, he filed the complaint in this action. In the first count of the complaint, the only one relevant to this appeal, he charged age discrimination in violation of the NJLAD and sought compensatory and punitive damages as well as counsel fees.
*176 The trial judge granted summary judgment in favor of defendant, holding plaintiff knowingly and voluntarily waived his age discrimination rights when he signed the waiver. The judge found the waiver supported by valid consideration. The judge rejected plaintiff's contention of duress created by an alleged "release or starve" circumstance. In the process, the judge also rejected, as grounds for creating a genuine issue of fact, plaintiff's belated "affidavit" where he stated he did not intend to give up his age discrimination claim when he signed the waiver.

II.
The statutory protections against age discrimination under the NJLAD do not bar knowing, wilful waiver of those protections. The NJLAD protects an employee from being forced to retire for reasons of age. See N.J.S.A. 10:5-12a. That protection stems from the public goal of combating the invidious aspects of life, often of tragic dimension, that force persons into unwanted, involuntary retirement. The statute, however, places no proscription on an employee executing a valid waiver of the law's protection.
Nonetheless, given the statutory goal, the validity of a waiver or release of a claim under the NJLAD must be made with careful considerations. What those considerations are is unsettled in our law. Accordingly, we turn to federal decisional law as a guide for standards appropriate for evaluating a waiver of an unlawful discrimination claim. Cf. Clowes v. Terminix International, Inc., 109 N.J. 575, 595, 538 A.2d 794 (1988).
Federal decisional law is ambivalent on the standards to be applied. The Fifth and Eighth Circuit Courts of Appeal apply "ordinary contract principles" in determining whether a waiver has been signed knowingly and voluntarily. See Lancaster v. Buerkle Buick Honda Co., 809 F.2d 539, 541 (8th Cir.), cert. denied 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987); Runyan v. National Cash Register Corp., 787 F.2d *177 1039, 1044 n. 10 (6th Cir.), cert. denied 479 U.S. 850, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986). The Second and Third Circuits apply a more stringent "totality of the circumstances" standard. See Bormann v. AT & T Communications, Inc., 875 F.2d 399, 403 (2d Cir.1988), cert. denied ___ U.S. ___, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989); Coventry v. United States Steel Corp., 856 F.2d 514, 524 (3d Cir.1988). Under the latter standard, the determination of whether a waiver was signed knowingly and voluntarily requires a review of all the circumstances in which the waiver was signed. Coventry v. United States Steel Corp., supra, 856 F.2d at 524. In light of the public goal of the NJLAD, we find the totality of the circumstances the more persuasive and appropriate standard.
In Coventry, the Third Circuit identified nonexclusive factors to be considered as part of the totality of the circumstances. Those factors include:
1) the plaintiff's education and business experience, 2) the amount of the time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law. [Id. at 523]
Additional factors to be considered are (1) whether an employer encourages or discourages an employee to consult an attorney and (2) whether the employee had a fair opportunity to do so. See Bormann v. AT & T Communications, Inc., supra, 875 F.2d at 403; Cirillo v. Arco Chemical Co., 862 F.2d 448, 454 (3d Cir.1988). This list is not exhaustive. However, in adopting the standard, as did the Second Circuit, we stress the need to carefully examine any situation in which an older worker bargains away his statutory right to be free from age discrimination. See Bormann v. AT & T Communications, Inc., supra, 875 F.2d at 403. It is in that context we review the trial judge's grant of summary judgment.
A trial judge cannot grant a summary judgment motion unless there is an absence of genuine issues of material *178 fact, so the moving party is entitled to judgment as a matter of law. R. 4:46-2; Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 75, 110 A.2d 24 (1954). The record presented must be considered in a light most favorable to the opponent of the motion and all doubts are resolved against the movant. See Ruvolo v. American Casualty Company, 39 N.J. 490, 499, 189 A.2d 204 (1963). Of particular import, however, is the word genuine. An opponent to a summary judgment motion cannot defeat the motion by raising a misguided subjective belief, without more, to create the existence of a genuine issue of material fact.
In this instance, plaintiff seeks to establish a genuine issue of material fact by asserting in an "affidavit" he did not intend to waive his age discrimination rights when he signed the release. Yet, acceptance of that representation would allow defeat of the summary judgment motion based on a misguided subjective belief. At the time he signed the release, it is undisputed he had a full awareness of his age discrimination rights as evidenced by his prior assertion of his rights in his letter to the personnel department. What his unexpressed intention was is irrelevant. To draw any conclusion other than that he was fully aware of his age discrimination rights would belie logic and undermine the appropriateness of the summary judgment process as well as undermine the voluntary settlement process. See Cirillo v. Arco Chemical Co., supra, 862 F.2d at 452-453.
Applying the totality of the circumstances standard in the context of the undisputed facts, we are satisfied the trial judge correctly concluded plaintiff voluntarily and knowingly waived any age discrimination claim he had. While the judge made no specific reference to the standard, the judge's review of the evidence suggests an awareness of its applicability.
Plaintiff on appeal does not dispute he had the education and business experience to evaluate and understand the agreement that contained the waiver. He also does not dispute that he *179 had the agreement for eight days during which he had the fair opportunity to consult with an attorney had he intended to raise the issue of age discrimination  an issue he had in mind as far back as the early 1980's, and one that did not leave his mind as evidenced by his filing of the claim with the Division of Civil Rights a little more than 21 weeks after his retirement.
Equally absent is any evidence of duress. Although plaintiff argued before the trial judge, as he did before us, that defendant placed him in a "sign or starve" position, he pointed to no factual basis for that contention. Instead, he admitted he did not ask to be transferred and offered no evidence that he asked to stay with the defendant in any position. The record discloses, and he does not dispute, he explored retirement and accepted it along with a retirement party.
Additionally, he did not have to waive any of his rights in order to receive retirement benefits. See Coventry v. U.S. Steel Corp., supra, 856 F.2d at 524. The Benefits Analysis-Separation Agreement delineated that retirement benefits were distinct and separate from separation benefits of 21 weeks of severance pay. Thus, plaintiff could retire and enjoy income and hospitalization benefits and not waive his rights to an age discrimination claim.
Moreover, when plaintiff accepted the severance pay, he received consideration separate and apart from any amounts contractually or legally due him from defendant. The Benefits Analysis-Separation Agreement made that clear. Accordingly, the totality of these circumstances supports the trial judge's conclusion plaintiff knowingly and voluntarily signed the waiver containing the release and covenant not to sue, which included any age discrimination claim plaintiff might have had.
Affirmed.