**Kenneth G. GERAGHTY, Appellant**

v.

**INSURANCE SERVICES OFFICE, INC.; Frank J. Coyne.**

No. 09–2475.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Feb. 10, 2010.

Filed: March 5, 2010.

William J. Koy, I, Esq., Morristown, NJ, for Plaintiff–Appellant.

Jeremy M. Brown, Esq., Lawrence R. Sandak, Esq., Proskauer Rose, Newark, NJ, for Defendant–Appellee.

Before: SLOVITER, ROTH and TASHIMA,* Circuit Judges.

OPINION

SLOVITER, Circuit Judge.

Before us is the appeal of Kenneth G. Geraghty from the District Court's order dismissing his complaint for retaliatory discharge under the New Jersey Conscien-

* Hon. A. Wallace Tashima, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

tious Employee Protection Act ("CEPA"), N.J. Stat. Ann. §§ 34:19–1 to –14, on the basis of Geraghty's broad release.

## I.

Defendants were Insurance Services Office, Inc. ("ISO"), a company that provides data and consulting services regarding risk, and Frank J. Coyne, ISO's President, Chairman, and Chief Executive Officer. Geraghty, the former Chief Financial Officer ("CFO") of ISO, began his employment with ISO in 2000. In December 2003, he became a named fiduciary for a multiple employer pension plan ("Plan") in which ISO participated. A year later, Geraghty was among those who raised concerns that one of the other named fiduciaries of the Plan, Robert Vagley, had a conflict of interest and was overcharging the Plan for administrative fees. The Department of Labor began an investigation in May 2005 and Vagley later resigned.

In July 2006, Geraghty and other named fiduciaries brought suit against Vagley and others for ERISA violations in connection with the Plan. In February 2007, Geraghty and other named fiduciaries requested that ISO produce additional documents in discovery. The ERISA suit was settled in April 2008.

On March 8, 2007, Coyne terminated Geraghty's employment with ISO. Geraghty claims the termination was in retaliation for his filing of the ERISA complaint and for cooperating in the Department of Labor's investigation. Geraghty also claims that following his termination, ISO took additional steps to punish him, by, inter alia, failing to offer him outplacement services, constructively terminating another ISO employee's assistance to him, removing language protecting him under ISO's fiduciary insurance policy, disputing his stock options, refusing to allow him to review certain ISO committee meeting minutes, and improper withholding of New Jersey state income taxes.

After his termination, Geraghty, who was represented by an attorney with undisputed extensive experience negotiating employment separation agreements, negotiated a separation package with ISO. On April 27, 2007, after six weeks of negotiation, Geraghty executed an "Agreement and General Release" ("Release"). Included in that General Release of Claims was the following:

> Employee knowingly and voluntarily releases and forever discharges, to the full extent permitted by law, ISO, its affiliates, subsidiaries, divisions, predecessors, successors and assigns and the current and former employees, officers, directors and agents thereof . . . of and from any and all claims, known and unknown, asserted and unasserted, Employee has or may have against Employer as of the date of execution of this Agreement and General Release, including, but not limited to, any alleged violation of: [list of thirteen federal and state statutes and] *[a]ny other federal, state or local civil or human rights law or any other local, state or federal law, regulation* or ordinance. . . .

App. at 59–60 (emphasis added).

As consideration for signing the Release, ISO paid Geraghty approximately $250,000. Geraghty had at least twenty-one days to review the Release with his attorney. Geraghty also had seven days following execution to revoke the Release.

> Upon execution, Geraghty certified that:
> Having elected to execute this Agreement and General Release, to fulfill the promises and to receive the sums and benefits in paragraph (2) above, Employee freely and knowingly, and after due consideration, enters into this Agreement and General Release intend-

ing to waive, settle and release all claims he has or might have against Employer. App. at 59.

More than seven days after execution, Geraghty sent ISO a letter stating that:

On April 27, 2007, I executed an Agreement and General Release between ISO and me. I consulted with an attorney of my choosing, prior to executing this Agreement and General Release.

... I have at no time revoked my acceptance or execution of that Agreement and General Release and hereby reaffirm my acceptance of that Agreement and General Release.

App. at 63.

## II.

Geraghty filed a complaint against ISO and Coyne which, after amendment, contains claims alleging violation of CEPA, defamation, breach of contract, breach of implied contract, and promissory estoppel. All of Geraghty's claims, with the exception of the CEPA claim, have been settled. ISO and Coyne filed a motion to dismiss Geraghty's CEPA claim under Federal Rule of Civil Procedure 12(b)(6), which the District Court granted. Geraghty appeals, arguing that the Release did not bar his CEPA claim and that the District Court improperly considered evidence outside of the complaint when ruling on the Rule 12(b)(6) motion.[1]

## III.

In granting the motion to dismiss, the District Court stated, "[t]here is no genuine question as to whether Geraghty signed the Release knowingly and voluntarily." App. at 7. The Court noted Ger-

aghty's "highly sophisticated education," and the record shows that he holds several degrees, including a Master of Science in Chemical Engineering degree from the University of California at Berkeley and a Master of Business Administration degree from Harvard University. He had significant business experience, as prior to joining ISO he served as a senior executive elsewhere. Moreover, he was represented by skillful counsel throughout and received $250,000 upon signing the Release, a sum Geraghty's brief terms "modest," *see* Appellant's Br. at 45, but which may not be considered so by others.

This Court uses a totality of the circumstances test when considering the validity of a release agreement. *See Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 524 (3d Cir.1988). In *Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir.1988), we listed those circumstances as follows: [2]

(1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation of the release before signing it; (4) whether plaintiff knew or should have known her rights upon execution of the release before signing it; (5) whether plaintiff was encouraged to seek, or in fact received, benefit of counsel; (6) whether there was opportunity for negotiation of the terms of the agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled to by law.

1. This court has jurisdiction pursuant to 28 U.S.C. § 1291. We have plenary review over a district court's order granting a motion to dismiss. *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 665 (3d Cir.2002).

2. Since the *Cirillo* decision, the ADEA statute contains its own provision applicable to a release, thereby superseding the *Cirillo* decision in this respect. *See Long v. Sears Roebuck & Co.*, 105 F.3d 1529, 1539 (3d Cir. 1997).

The "totality of the circumstances" test applies to a release of both the federal claims and those arising under New Jersey law. *See Swarts v. Sherwin–Williams Co.,* 244 N.J.Super. 170, 581 A.2d 1328, 1332 (1990) (adopting the Third Circuit totality test).

■ Here, nearly every factor weighs in favor of a finding that Geraghty executed the Release in a knowing and voluntary manner. Geraghty now attempts to circumvent the broad language of the release, arguing that the Release failed to specify that it included release of a CEPA claim. We agree with the District Court's rejection of this argument. Under New Jersey law, "the phrase 'any and all' allows for no exception." *Isetts v. Borough of Roseland,* 364 N.J.Super. 247, 835 A.2d 330, 336 (2003) (citing *Atlantic Cas. Ins. Co. v. Interstate Ins. Co.,* 28 N.J.Super. 81, 100 A.2d 192, 198 (1953)); *see also Am. Lumber Corp. v. Nat'l R.R. Passenger Corp.,* 886 F.2d 50, 55 (3d Cir.1989) (finding that "all possible claims" means all claims the plaintiff asserted or could have asserted).

The Release was a relatively short document consisting of only four pages. It used mostly straight-forward language releasing ISO from "any and all claims, known and unknown, asserted and unasserted," and when listing numerous federal and state causes of action stated that the waiver was "including, but not limited to" those claims. App. at 59. This is clear and unambiguous language that an average person would understand to be all-encompassing. Geraghty admitted that at the time of execution he was aware that he might have a CEPA claim. Therefore, the clear, expansive language of the Release and Geraghty's own knowledge of a potential CEPA claim outweigh the failure to name specifically the CEPA statute.

Geraghty relies on the decision in *Keelan v. Bell Commc'ns Research,* where the Superior Court of New Jersey, after noting that courts in the Third Circuit had never held that a release must specifically mention a statute to effectively bar a claim, concluded that the employer's failure to specifically mention CEPA by name raised an issue of material fact regarding whether the waiver was voluntary. 289 N.J.Super. 531, 674 A.2d 603, 610 (1996). Geraghty points to no case since *Keelan* in which a court has held that a general release is unenforceable as a waiver of a CEPA claim. In contrast, courts have enforced general releases where other remedial employment laws are not specifically named. *See Swarts,* 581 A.2d at 1331, 1333 (affirming dismissal of a plaintiff's claim under the remedial New Jersey Law Against Discrimination ("NJLAD") although the release did not specifically mention NJLAD). Moreover, the *Keelan* court also found that the employee had only a short period of time to consider an important part of the release and was potentially under duress at the time of signing. *Keelan,* 674 A.2d at 611–12. Thus, the facts of *Keelan* are largely distinguishable.

■ Geraghty also tries to avoid waiver of his CEPA claim by arguing that the CEPA claim had not accrued at the time of the Release execution. Generally, courts will not interpret a release to bar a claim that had not accrued as of the date of signing. *Bowersox Truck Sales & Serv., Inc. v. Harco Nat'l Ins. Co.,* 209 F.3d 273, 279 (3d Cir.2000). Geraghty points to actions taken by ISO after his termination to support his contention that his CEPA claim had not yet accrued as of the Release execution. A CEPA claim accrues as of the date of the discharge, suspension, or demotion. *See Ivan v. County of Middlesex,* 595 F.Supp.2d 425, 467 (D.N.J.2009). Therefore, Geraghty's CEPA claim accrued when he was terminated, weeks before he signed the Release.

Although Geraghty points to actions taken by ISO that constitute a pattern of retaliatory conduct in violation of CEPA, these are secondary actions that are irrelevant for purposes of this case. The heart of Geraghty's CEPA cause of action accrued before the Release was executed, when he was terminated. Any alleged actions taken by ISO after Geraghty's termination would not be covered by CEPA, because the statute applies to "employees." *See* N.J. STAT. ANN. § 34:19–2(b) (defining employee as an individual who performs services under the control of an employer in return for compensation); *see Zubrycky v. ASA Apple, Inc.*, 381 N.J.Super. 162, 885 A.2d 449, 452 n. 2 (2005) ("CEPA does not apply to post-employment conduct.") (citing *Young v. Schering Corp.*, 141 N.J. 16, 660 A.2d 1153 (1995); *Beck v. Tribert*, 312 N.J.Super. 335, 711 A.2d 951 (1998)). Thus, Geraghty's CEPA claim accrued when he was terminated and was therefore included within the language of the Release.

### IV.

Finally, Geraghty contends that the District Court erred by relying on the Release when deciding ISO's motion to dismiss. As a general rule, when "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d). Our case law is in accord. *See, e.g., Lum v. Bank of Am.*, 361 F.3d 217, 222 n. 3 (3d Cir.2004) (noting that in deciding a motion under Rule 12(b)(6), "courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim"). The District Court appears to have recognized this rule, noting: "To the extent the Court considers facts proffered by Geraghty in his briefs and accompanying Declaration, and revealed at oral argument to be undisputed, the motion to dismiss is converted into a motion for summary judgment on those limited factual issues." App. at 6.

 Failure to give the required notice that fairly apprises the parties that the court is treating a motion as one for summary judgment may compel reversal, unless the error is harmless. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287–89 (3d Cir.1999). Here, we conclude that the error was harmless. First, no one disputes the authenticity of the Release. Second, Geraghty was able to anticipate that the summary judgment procedure would be followed, filing his own declaration in opposition to the motion to dismiss. Third, Geraghty has made no showing that he had insufficient notice to adduce any other relevant evidence and, thus, has shown no prejudice from the lack of formal notice.

In these circumstances, we conclude that the District Court did not err in converting ISO's motion to dismiss into a motion for summary judgment. Geraghty was not prejudiced by the court's failure to give formal notice of the conversion.

### V.

For the reasons set forth, we will affirm the decision of the District Court.