**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0294-20

LON C. TAYLOR,

    Plaintiff-Appellant,

v.

PUBLIC DEFENDER JOSEPH
KRAKORA, RETIRED ACTING
DEPUTY PUBLIC DEFENDER
MATTHEW ASTORE, RETIRED
FIRST ASSISTANT PUBLIC
DEFENDER SUSAN GREEN,
and NEW JERSEY OFFICE OF
THE PUBLIC DEFENDER,

    Defendants-Respondents.

_____

Argued June 6, 2022 – Decided July 15, 2022

Before Judges Rothstadt, Mayer, and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1441-19.

Kevin T. Flood argued the cause for appellant.

Niccole L. Sandora, Deputy Attorney General, argued the cause for respondents (Matthew J. Platkin, Acting

Attorney General, attorney; Jane C. Schuster, Assistant Attorney General, of counsel; Niccole L. Sandora, on the brief).

PER CURIAM

Plaintiff Lon C. Taylor appeals from the Law Division's August 18, 2020 Rule 4:6-2(e) dismissal of the complaint he filed that asserted claims relating to his alleged forced retirement against his former employer, defendant New Jersey Office of the Public Defender (OPD), and his supervisors, Public Defender Joseph Krakora, Retired Acting Deputy Public Defender Matthew Astore, and Retired First Assistant Public Defender Susan Green. His complaint included claims under the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -50, and the New Jersey Civil Rights Act, (NJCRA) N.J.S.A. 10:6-1 to -2, as well as for infliction of emotional distress.

The motion judge dismissed the complaint after determining plaintiff voluntarily waived all his claims against defendants pursuant to a settlement agreement and its subsequent amendment that the parties executed prior to defendant's retirement from the OPD. The judge also alternatively dismissed without prejudice four counts of the complaint for failure to state a claim upon which relief could be granted.

On appeal, plaintiff argues the settlement agreement, as amended, was unenforceable because it was unconscionable, a contract of adhesion, against public policy, and violated the NJLAD. Moreover, plaintiff claims, as he alleged in his complaint, that he did not voluntarily enter into the settlement agreement but signed it under the mental anguish and duress caused by defendants. Additionally, plaintiff argues the judge improperly dismissed his complaint because his pleadings were sufficient to at least suggest claims, after giving him the benefit of all reasonable inferences.

We have considered plaintiff's contentions in light of the record and applicable principles of law. We reverse the dismissal of plaintiff's complaint that was based upon plaintiff signing the settlement agreement and its amendment as we conclude the motion judge mistakenly applied the wrong standard to defendants' Rule 4:6-2 motion by not accepting as true the allegations of plaintiff's complaint as required when considering a motion filed under the rule. In accordance with Rule 2:2-3, we do not address plaintiff's remaining contentions about the without prejudice dismissal of four counts of his complaint as that portion of the challenged order remains interlocutory.

A-0294-20

## I.

"We review a grant of a motion to dismiss a complaint for failure to state a cause of action de novo, applying the same standard under Rule 4:6-2(e) that governed the motion [judge]." Wreden v. Twp. of Lafayette, 436 N.J. Super. 117, 124 (App. Div. 2014). That standard is whether the pleadings even "suggest[]" a basis for the requested relief. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989). As a reviewing court, we assess only the "legal sufficiency" of the claim based on "the facts alleged on the face of the complaint." Green v. Morgan Props., 215 N.J. 431, 451 (2013) (quoting Printing Mart-Morristown, 116 N.J. at 746).

Consequently, "[a]t this preliminary stage of the litigation [we are] not concerned with the ability of plaintiffs to prove the allegation contained in the complaint." Printing Mart-Morristown, 116 N.J. at 746. "[T]he ability of the plaintiff to prove its allegations is not at issue," rather the facts as pled are considered "true" and accorded "all legitimate inferences." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 166, 183 (2005). We "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim." Printing Mart-

Morristown, 116 N.J. at 746 (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)).

Only in the "rare instance" where a cause of action is not even "suggested" by the pleadings, is a Rule 4:6-2(e) motion to dismiss granted. Flinn v. Amboy Nat'l Bank, 436 N.J. Super. 274, 286 (App. Div. 2014) (first quoting Smith v. SBC Commc'ns, Inc., 178 N.J. 265, 282 (2004); and then quoting Printing Mart-Morristown, 116 N.J. at 746). Likewise, where the pleadings give rise to a question of whether a party voluntarily and intentionally waived a known right our review is similarly de novo. Cole v. Jersey City Med. Ctr., 215 N.J. 265, 275-76 (2013) (quoting Knorr v. Smeal, 178 N.J. 169, 177 (2003)).

"However, we have also cautioned that legal sufficiency requires allegation of all the facts that the cause of action requires." Cornett v. Johnson & Johnson, 414 N.J. Super. 365, 385 (App. Div. 2010), aff'd as modified, 211 N.J. 362 (2012). In the absence of such allegations, the claim must be dismissed. Ibid. (citing Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005)).

II.

With these guiding principles in mind, we turn to the allegations of plaintiff's complaint. They are summarized as follows.

5

Plaintiff was employed as an Assistant Deputy Public Defender (APD) by the OPD from January 1990 to September 1, 2017. During the relevant period, Krakora was the New Jersey Public Defender, Astore was Acting Deputy Public Defender of the OPD Appellate Section and supervised plaintiff, and Green was First Assistant Deputy Public Defender of the Appellate Section and also supervised plaintiff.

Prior to 2012, plaintiff had an unblemished record serving as an APD in criminal cases. According to plaintiff, beginning in or about 2012, the OPD through Krakora and others, began to treat him differently than he had been treated in the past, without any legitimate justification. Specifically, during 2012, Krakora told plaintiff that "he expected older attorneys 'to shoulder their burden,'" bragged about hiring many young attorneys to replace them, and mocked older attorneys for their views about zealous advocacy.

Thereafter, in 2013, following a meeting where Astore berated plaintiff regarding two cases he recently had been working on, Deborah Collins, a manager in the Appellate Section, shared with plaintiff that Astore bragged to her and others about berating plaintiff. According to plaintiff, Collins stated that she and others voiced their disapproval of Astore's actions to him.

6

Nevertheless, in 2014, Astore expressed his unjustified criticism of plaintiff about his handling of a case and expressed to others his contempt for plaintiff and criticism of his work. These attacks on plaintiff occurred while at around the same time, in late-2014 to early-2015, plaintiff underwent hip replacement surgery, retinal surgery, and a difficult divorce that left him chronically depressed and on medication.

However, despite the harsh criticism to which he was subjected, plaintiff had, up until mid-2015, an exemplary record and received hundreds of glowing reviews about briefs that he wrote. And, in fact, in March 2015, plaintiff received a positive evaluation commending him for the high-quality of his work.

Nevertheless, in July 2015, in response to Astore chastising one of plaintiff's colleagues for his vigorous representation of a client, plaintiff posted the following comment on Facebook regarding his divorce and OPD management:

> What drives me nuts is when people in the workplace and the home don't talk about the big elephants in the room, prompted by fear, loathing and a phony, shrill inner-voice that claims we are taking the "high road." But we must at least, even if in whispers, talk among each other. I'm experiencing both right now, big time.

In response, three days later, Astore confronted plaintiff in a hostile manner and asked him, "Why do you like to hang around losers?"

7

In August 2015, Green issued an "unduly and extremely critical" review of a letter-brief plaintiff wrote, which was not consistent with past practices. Plaintiff asked for an explanation about why the review process changed and the next month, he met with Green and Astore regarding the matter, during which he was "scold[ed]" again for his Facebook post and for "unfriending" OPD colleagues, which others also did.

According to plaintiff, this was "a stunning and chilling suppression of free speech in the wake of the hostility exacted upon [p]laintiff by [d]efendants." Plaintiff separately met with Krakora in the presence of Christopher Rojas regarding his letter-brief, which also resulted in a "scolding" for his Facebook post.

Green continued issuing critical reviews of plaintiff's work. In response, in October 2015, plaintiff emailed his Communication Workers of America (CWA) union representative regarding the retaliation he received from defendants and what seemed like their goal to terminate him because of his age, disabilities, and his Facebook post. The representative called him and advised him that his emails may be seen by others, to stop communicating by email, and to delete the emails "as others had done."

A-0294-20

The next month, Green gave plaintiff an overall "satisfactory" evaluation, however, she focused her negative comments on the quality of plaintiff's briefs and expressed her concern that "[p]laintiff was not able to write a basic brief." Two months later, per Astore's request, Green met with plaintiff to advise him that he was not meeting expectations and that he was on the "hot seat," and to ask if he was "mentally up" for the job, without discussing any options that could help. Plaintiff considered this meeting as confirmation that their goal was to wrongfully terminate him.

In February 2016, plaintiff heard from a colleague that Green told him that if plaintiff retired by the end of the year, Astore would likely harass him less. Astore confirmed Green's advice and promised plaintiff a "soft landing."

Plaintiff felt he had to agree with this proposal in light of the pattern of retaliation he was confronted with daily. However, he asked Astore to permit him to retire in September 2017 so he could receive "social security" at the age of 62. Astore rejected the request, saying, "that is not going to happen."

Astore's response, along with defendants bypassing protocol and remedial options, and their constantly demeaning plaintiff, caused him to become mentally exhausted and made him fear he would be terminated if he did not retire when defendants requested. As a result, plaintiff informally agreed to

9

retire at the end of 2016, and took a month-long mental health leave of absence from work during March 2016, at the direction of his doctor.

After plaintiff returned to work, in July 2016, plaintiff asked to work from home for one day due to illness, which Green denied, stating Astore would not approve him "working from home, whatsoever." That response was inconsistent with past procedures as ordinarily Green approved these requests for other attorneys. In fact, at a meeting several months later, Astore bragged to plaintiff that he approved three attorneys' requests to work from home due to personal difficulties. Plaintiff considered Green and Astore's conduct as hostile and retaliatory toward him.

During the latter part of 2016, plaintiff was subjected to increasing criticism of his work. For example, in October 2016, Astore "scolded" plaintiff during a meeting for not doing his job, even though plaintiff had done everything required of him, which was more than what other retiring attorneys were expected to do.

In December 2016, in response to receiving an "extremely unfair, negative[,] and nasty" evaluation from Green, plaintiff contacted his union and filed two grievances against OPD management, claiming they harassed and discriminated him because of his age and did not afford him his contractual

10

rights, and requesting a corrected evaluation.  Plaintiff also filed a complaint with the Equal Employment Opportunity Commission (EEOC).

In response to plaintiff's grievances, on December 29, 2016, defendants met with plaintiff and offered to settle the matter.  They presented plaintiff, who appeared without counsel but with his union representative, with a settlement agreement whereby they permitted plaintiff to withdraw his retirement application, conditioned upon plaintiff resubmitting it with a September 1, 2017 retirement date, his accepting a demotion in title and pay, and requiring that he immediately resign/retire if they determined plaintiff was not meeting the standards of that position.

Moreover, under the proposed agreement, plaintiff was required to release OPD and its employees from all claims, suits, or actions.  The waiver provision of the proposed settlement agreement stated the following:

> [Plaintiff] waives all claims, suits or actions, whether known, unknown, vested or contingent, civil, criminal or administrative, in law or equity against the State of New Jersey, the [OPD], their employees, agents, or assigns, including but not limited to those which have been or could have been made or prosecuted on account of any conduct of any party occurring at any time with respect to the events, information or disputes giving rise to this action up to the date of this agreement, including but not limited to all claims under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans with

11

Disabilities Act, the Family Leave Act, the Family and Medical Leave Act, the [NJLAD], NJ Family Leave Act, the Equal Pay Act, the Conscientious Employee Protection Act, the Age Discrimination in Employment Act, Title 11A – the Civil Service Act, the Handicapped, Blind or Deaf Persons Civil Service Act, the Developmental Disabled Rights Act, the Alcoholism, Treatment and Rehabilitation Act, the Older Workers Benefits Protection Act, the Occupational Safety and Health Act, the Public Employee Occupational Safety and Health Act, the Right to Know Act, the New Jersey Smoking Act, New Jersey wages and hours law, public works statutes, unemployment compensation laws, disability benefits laws, the US Constitution, the New Jersey Constitution, any workers compensation or common law claims and any contract express or implied.

The settlement agreement also included a provision that the parties "freely and voluntarily" agreed to its terms. Fearing he would be immediately terminated if he did not sign the settlement agreement, and while under the stress and mental anguish caused by defendants' repeated harassment, discrimination, and retaliation, plaintiff signed the "inequitable, unilateral, and unconscionable 'settlement'" on the day it was presented to him.

He also signed at the same time a certification attached to the agreement which stated that he "reviewed this Settlement Agreement and fully underst[ood] its meaning and terms," that his CWA "representative questioned [his] acceptance of the agreement," that he was "satisfied with [his] representation,"

12

that he "enter[ed] into this Agreement voluntarily," and that he understood it would "terminate all claims and further appeal against the State of New Jersey, [OPD]."

In February 2017, the EEOC issued a notice of investigation into plaintiff's complaint, but defendants forced plaintiff to withdraw his complaint. Plaintiff requested a transfer to a different unit or to be supervised by someone other than Green or Astore, but defendants denied that request and instead placed him under Astore's direct supervision.

On July 20, 2017, after monitoring him, Astore and Krakora "combatively and aggressively confronted" plaintiff about his timesheets which they claimed he falsified because he arrived late and left early. They stated he would be docked two weeks' pay and "threatened" that if he disagreed with them then the consequences would be "severe." Plaintiff found their actions inconsistent with past practices as, customarily, retiring attorneys were not held to strict schedules and, in any event, attorneys would first be warned and then face progressive discipline.

On July 24, 2017, Krakora drafted a proposed amendment to the settlement, wherein plaintiff would agree to be suspended without pay for nine days in August for "falsification of timesheets," going forward he would sign in

A-0294-20

and out with a secretary, that Astore would continue as his direct supervisor, and that the parties "voluntarily agree[d]" to its terms. At that time, defendants' threats of "severe" consequences caused plaintiff to fear he would be terminated and face criminal charges if he did not acquiesce, so, on July 25, 2017, in the presence of his union representative, but again without counsel, he signed the amendment along with another certification confirming his understanding of the amendment on the day it was presented to him.

On September 1, 2017, plaintiff was "forced to retire," which he viewed as essentially a "de facto firing," and one final act of retaliation for his Facebook post, age, disabilities, and filing grievances.

Almost two years later, plaintiff filed his complaint, which he amended on August 25, 2019. In it, plaintiff pled eleven counts, asserting claims under the NJCRA, the LAD, and common law torts, including "emotional distress" and civil conspiracy, arising out of defendants conduct from 2015 through September 1, 2017. In response, without filing an answer, defendants filed a Rule 4:6-2(e) motion to dismiss plaintiff's amended complaint, arguing that plaintiff's claims were barred by the settlement agreement as amended, and that plaintiff failed to plead sufficient facts to suggest claims for which relief could

14

be granted. Plaintiff opposed the motion with his attorney's supporting certification.

After considering the parties' oral arguments,[1] the motion judge issued a comprehensive oral decision on August 6, 2020 that she continued on August 13, 2020. In her decision, she first determined whether each count was properly pled and then whether the agreement barred plaintiff's claims.

First, the judge determined all counts were properly pled, except count four, plaintiff's LAD age discrimination claim, because plaintiff did "not [plead] enough facts in the complaint to show lack of similar employment actions to others in the protective class";[2] count five, his LAD failure to accommodate claim, because "plaintiff ha[d] not shown that he made a request for accommodation due to his perceived disabilities with physical and mental

---

[1] Although the arguments are referred to in the order under appeal, neither party has supplied a transcript of the proceedings at which they were presented.

[2] The judge's comment as transcribed reflects what appears to be a misstatement of the law that the judge cited earlier in her oral decision. Specifically the judge first noted that the fourth element of a discrimination claim is a showing that "others not within [plaintiff's] protective class were not subjected to similar employment actions," but then she concluded that "[t]here's not enough facts in the complaint to show lack of similar employment actions to others in the protective class." (Emphasis added). As discussed infra, we remand this problem for reconsideration by the motion judge.

ailments;" count eight, his aiding and abetting LAD claim, because plaintiff did not specify who the principal violator was that the others aided and abetted; and count ten, his emotional distress claim, because plaintiff did not specify this was a claim for <u>intentional</u> infliction of emotional distress.[3]

Ultimately, the judge dismissed all eleven counts because they were barred by the settlement agreement and its amendment, which the judge determined plaintiff knowingly and voluntarily entered based on the pleadings alone. The judge found the agreement was clear, reasoning that "[t]he agreement [waived] any and all rights to sue the defendants for actions that gave rise [to] the plaintiff's grievances. The agreement also state[d] that it fully dispose[d] of all issues and controvers[ies] between the parties."

The judge then considered the <u>Swarts</u>[4] factors and determined plaintiff voluntarily signed the agreements, reasoning:

> The plaintiff being an experienced attorney with over [twenty-five] years should have provided him with a basic understanding of what the agreement was and what it meant to sign it. The benefits conferred on the plaintiff allowed him to continue working in his job until he reached retirement and to receive his full pension. To add more, the plaintiff also relied upon a

---

[3] Defendants' brief on appeal inaccurately states count 3 was also dismissed, it was not.

[4] <u>Swarts v. Sherwin-Williams Co.</u>, 244 N.J. Super. 170 (App. Div. 1990).

union rep from the [CWA] to help him in his decision to implement and sign the agreement. This also negates any argument that the plaintiff lacked any bargaining power in this process.

While the plaintiff may argue economic compulsion, the totality of the circumstances weigh against his argument when considering that the plaintiff is experienced as attorney, his benefit that he received from the agreement, the support the plaintiff had in bargaining and undersigning the agreement, the interest encouraging settlements when they appear to be fair and beneficial to all parties.

The judge acknowledged this determination left redress only for "actions after the agreement was reached" and that "fall[] outside the wording of the agreement."

On August 18, 2020, the judge entered an order dismissing plaintiff's complaint without prejudice.[5] This appeal followed.

III.

We begin our review by addressing plaintiff's argument that the motion judge's conclusion that plaintiff waived any claims he had against defendants under the settlement agreement as amended was contrary to the law.

---

[5] Although the judge designated the dismissal as without prejudice, her finding as to the settlement agreement as amended rendered the matter final as to claims arising prior to the signing of the settlement agreement's amendment. For that reason, as to that issue, we accepted plaintiff's appeal as not being from an interlocutory order.

Specifically, he contends the agreements were unconscionable and coercive, contracts of adhesion, and invalid under a Swarts analysis because of defendants' one-sided bargaining power, coercive tactics, and his mental anguish that defendants caused through incessant discriminatory and retaliatory acts. He also claims the agreement as amended is against public policy and banned by statute. According to plaintiff he sufficiently pled facts to support his assertion that he involuntarily signed the agreement under mental anguish and duress, questions of voluntariness should have been left for a jury to decide or at the very least a hearing should be held on that issue.

Plaintiff also contends that the duress he was under to sign the amendment was underscored by defendants' implicit threat of criminal prosecution. Additionally, plaintiff contends his experience practicing criminal law did not support finding he voluntarily entered into the agreements, and no other Swarts factor favors that finding.

Also, plaintiff concedes the recently enacted statute barring waiver of certain discrimination claims is not retroactive, but argues its existence demonstrates that such agreements are against public policy. Ultimately, plaintiff emphasizes his "[a]mended [c]omplaint clearly sets forth that the [agreement as amended] [was] not entered into voluntarily," and, according to

18

plaintiff, the judge erred by not according him with all reasonable inferences at the pleading stage.

We agree that the issue about whether plaintiff voluntarily entered into the settlement agreement and its amendment should not have been determined in response to a Rule 4:6-2(e) motion and decided upon the pleadings in light of the complaint's allegations that he was forced to sign the settlement agreement and its amendment under duress and while allegedly suffering from mental health and other issues.

Prior to March 18, 2019, employees could waive "substantive or procedural right[s] or remed[ies] relating to a claim of discrimination, retaliation, or harassment." See Antonucci v. Curvature Newco, Inc., 470 N.J. Super. 553, 563 (App. Div. 2022) (quoting N.J.S.A. 10:5-12.7) (recognizing N.J.S.A. 10:5-12.7 provides such waivers to be against public policy and unenforceable in agreements entered into, renewed, modified, or amended on or after March 18, 2019);[6] see also, e.g., Swarts, 244 N.J. Super. at 176 (addressing a waiver before the enactment of the amendment to the LAD). However, for the

_____

[6] We reject as without merit plaintiff's argument on appeal that N.J.S.A. 10:5-12.7 renders pre-amendment waivers unenforceable. The statute does not retroactively apply to plaintiff's agreement, which was entered into in 2016 and amended in 2017.

waiver to be enforceable, the employee had to execute the waiver knowingly and voluntarily. Swarts, 244 N.J. Super at 176.

In Swarts, we adopted a totality of the circumstances test to determine whether a waiver was enforceable. Id. at 177. There, we delineated the following six nonexclusive factors that a court should consider when making that determination:

> 1) the plaintiff's education and business experience, 2) the amount of the time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.
>
> [Ibid. (quoting Coventry v. U.S. Steel Corp., 856 F.2d 514, 523 (3d Cir. 1988)).]

Additional considerations included: "(1) whether an employer encourages or discourages an employee to consult an attorney and (2) whether the employee had a fair opportunity to do so." Ibid.

Unlike here, in Swarts, we applied the delineated considerations in our review of a motion judge's grant of summary judgment dismissing plaintiff's complaint. Id. at 172. We observed the plaintiff sought to create a genuine issue of material fact by asserting in an affidavit only that "he did not intend to waive

20

his age discrimination rights when he signed the release." Id. at 176. However, we determined that the affidavit was disingenuous based on the totality of the circumstances, in other words that the plaintiff indeed voluntarily waived his claims.

Although possible, as in Swarts, a motion for summary judgment is ordinarily "very difficult to sustain" where "subjective elements of willfulness[ or] intent" are "material to the claim or defense." Judson v. Peoples Bank & Tr. Co. of Westfield, 17 N.J. 67, 76 (1954). Where the issue is not whether the waiver is valid as a matter of law, but whether it was entered into voluntarily, logically, on a motion to dismiss under Rule 4:6-2(e) that requires a court to accept the facts as pled as true and uncontradicted, rather than a court inquiring on summary judgment whether an issue of fact is genuine under Rule 4:46-2(c), it is even more difficult, if not impossible, to determine the issue. See Banco Popular, 184 N.J. at 166. Consequently, the Swarts analysis is not appropriate in consideration of a Rule 4:6-2(e) motion to dismiss where, as here, a plaintiff pled facts to suggest he did not voluntarily execute a waiver.

In fact, as far as we can determine, no state or federal court has conducted a Swarts analysis in the context of a Rule 4:6-2(e) motion to dismiss. See, e.g., Banco Popular, 184 N.J. at 166 (motion for summary judgment); Great W.

21

Mortg. Corp. v. Peacock, 110 F.3d 222, 226 (3d Cir. 1997) (motion to compel arbitration); Geraghty v. Ins. Servs. Office, 369 F. App'x 402, 407 (3d Cir. 2010) (at least partially converted the motion to dismiss into a motion for summary judgment). The reason, we conclude, is that the standard on a motion to dismiss does not lend itself to determining voluntariness based on Swarts factors and a totality of the circumstances test. On a Rule 4:6-2(e) motion, the only question should be whether the facts as pled suggest the waiver was signed involuntarily.

Another interrelated defense to the enforcement of a contract is that a party was forced to enter it under economic duress. "Economic duress occurs when (1) the party alleging it is 'the victim of a wrongful or unlawful act or threat', [(2)] which 'deprives the victim of his [or her] unfettered will.'" Muhammad v. Cnty. Bank of Rehoboth Beach, 379 N.J. Super. 222, 240 (App. Div. 2005) (quoting Quigley v. KPMG Peat Marwick, LLP, 330 N.J. Super. 252, 263 (App. Div. 2000)), rev'd on other grounds, 189 N.J. 1 (2006). "[T]he 'decisive factor' is the wrongfulness of the pressure exerted[,]" and "[t]he term 'wrongful' . . . encompasses more than criminal or tortuous acts, for conduct may be legal but still oppressive." Ibid. (quoting Cont'l Bank of Pa. v. Barclay Riding Acad., 93 N.J. 153, 176 (1983)). "Further, wrongful acts can include acts that are wrong in a moral or equitable sense." Id. at 240-41 (affirming grant of order

to compel arbitration where the plaintiff was not the victim of a wrongful act because, although she was experiencing financial distress, "[n]o employee of the defendants solicited plaintiff or exerted pressure on her to" enter into any payday loan agreement).

Here, it was simply premature to question plaintiff's voluntariness and dismiss his complaint in light of the facts alleged by plaintiff that we must accept as true—including that plaintiff was forced to sign the agreements under duress—rendering the agreements unenforceable. This is so especially since plaintiff did not allege the duress in a conclusory fashion, rather he detailed the repeated acts of "sadistic" retaliation by defendants.

As the motion judge recognized, plaintiff's alleged forced retirement under the settlement agreement created the possibility of economic compulsion. Although "economic pressure alone is not enough to constitute duress rendering an otherwise valid release void," Keelan v. Bell Commc'ns Rsch., 289 N.J. Super. 531, 548 (App. Div. 1996), the nature and extent of the threat along with its deleterious effect on plaintiff suggests the agreements could have been executed involuntarily, especially in light of the totality of plaintiff's allegations. See ibid. (reversing grant of summary judgment where employee was given a short amount of time to review the agreement and was potentially under duress).

A-0294-20

Under these circumstances, defendants' motion to dismiss should have been denied.

Contrary to defendants' contentions on appeal, even if we apply the Swarts factors to plaintiff's allegations, they did not warrant dismissal on the pleadings. A Swarts analysis of the allegations that, again, we must accept as true, favors a determination that plaintiff involuntarily entered into the settlement agreement and its amendment.

As to factor one (education and experience), although plaintiff was an attorney, his experience as an APD practicing criminal law does not necessarily provide him with the extensive knowledge, let alone competence, of an employment law attorney.

Factor two (time to review agreement) also favors involuntariness as plaintiff was apparently forced to sign the agreements the same day they were presented to him. See Keelan, 289 N.J. Super. at 547 (seven days to review created genuine issue of material fact).

Factor three (input in deciding terms) also favors involuntariness; based on plaintiff's allegation that he was being forced to retire, regardless of whether his retirement date was the end of 2016 or later in 2017—retirement was not his choice.

Factor four (clarity of agreement) is unsupported by the agreement's lengthy 242-word sentence that included language that could be read to have limited the agreement to only claims arising from the grievances plaintiff filed and no other claims.  See id. at 543 (130-word waiver sentence was still clear).

As for factor five (attorney representation), it also favors involuntariness, because plaintiff was not represented by an attorney nor was he encouraged to seek an attorney, and, based on the limited time permitted to sign the agreements, he was not afforded a fair opportunity to do so.

Finally, factor six (consideration given) also favors involuntariness. Although the parties did not provide the terms of the retirement application for the appellate record, we infer the ordinary practice was that he could withdraw his voluntary retirement application up until his retirement date and continue in his same position at his same salary, assuming his position was still available. Under that circumstance, plaintiff did not receive any consideration in exchange for his waiver and agreement to take a demotion in title and a reduction in pay.

We therefore reverse the dismissal of plaintiff's complaint to the extent it was based upon an assumption that plaintiff voluntarily signed the settlement agreement and its amendment, which was contrary to the allegations of the complaint.

25

IV.

Having determined that plaintiff's complaint should not have been dismissed on the pleadings based on the settlement agreement and its amendment, we turn to plaintiff's arguments about the dismissal of the four counts that the motion judge explained was for reasons other than the terms of the settlement agreement and its amendment. We note again that the dismissal of those counts was without prejudice to the extent the waiver did not apply, and therefore was an interlocutory order that should await final deposition. We therefore are not determining in this appeal whether the dismissal of the four counts without prejudice should be upheld. Plaintiff's appeal as to those counts is dismissed without prejudice as interlocutory.

However, as earlier noted, there is an inconsistency in the motion judge's statement of reason relating to the dismissal of the fourth count. To ensure that plaintiff understands the parameters of any attempt to amend his complaint, we direct the motion judge to clarify the inconsistency in her statement of reasons. In doing so, the judge should consider recent case law[7] and state what further

---

[7] For example, in <u>Nini v. Mercer Cnty. Cmty. Coll.</u>, 406 N.J. Super. 547, 554 (App. Div. 2009), we recognized "[i]n order to successfully assert a prima facie claim of age discrimination under the LAD, plaintiff must show that: (1) she was a member of a protected group; (2) her job performance met the 'employer's

allegations are required to remedy the deficiency she intended to point out to the parties, or if upon reflection she is convinced that the fourth count should not have been dismissed, the judge should enter an order reinstating that count without further amendment.

Having said that, we do not suggest one way or the other what the outcome of the judge's reconsideration of the problem should be, other than that it should be corrected. The judge should complete her review of this issue and notify the parties of her determination within fourteen days. Thereafter, plaintiff should be allowed fourteen days to file an amended complaint if he so chooses.

The matter is reversed for entry of an order reinstating plaintiff's complaint, except for counts four, five, eight and ten, which remain dismissed without prejudice to plaintiff filing an amended complaint within fourteen days of receipt of the motion judge's clarification as to the dismissal of count four.

Dismissed in part; reversed in part and remanded for further proceedings consistent with our opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

legitimate expectations'; (3) she was terminated; and (4) the employer replaced, or sought to replace, her. Zive v. Stanley Roberts, Inc., 182 N.J. 436, 450 (2005)."

A-0294-20